# NEW YORK FOUNDLING HOSPITAL *v*. GATTI.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 21.  Argued April 26, 1906.—Decided December 3, 1906.

A *habeas corpus* proceeding involving the care and custody of a child of tender years is not decided on the legal rights of the petitioner, but upon the court's view, exercising its jurisdiction as *parens patriæ*, of the best interest and welfare of the child; such a proceeding does not involve the question of personal freedom, and an appeal will not lie to this court, under § 1909, Rev. Stat., from the order of the Supreme Court of a Territory awarding the custody of a child of three years of age to one of several rival claimants therefor.

Appeal from 79 Pac. Rep. 231, dismissed.

THE facts are stated in the opinion.

*Mr. D. Cady Herrick*, with whom *Mr. Charles E. Miller* and *Mr. William C. Trull* were on the brief, for appellant:

The order is appealable.  By § 1909, Rev. Stat., writs of error and appeal are allowed to the Supreme Court of the United States, upon writs of *habeas corpus* involving the question of personal freedom.  *Gonzales* v. *Cunningham*, 164 U. S. 612; *Cross* v. *Burke*, 146 U. S. 82.

This right was not taken away by the Circuit Court of Appeals act, 26 Stat. 830, § 15; *Shute* v. *Keyser*, 149 U. S. 649; *Folsom* v. *United States*, 160 U. S. 121.

The State of New York, in its capacity of *parens patriæ*,

has an absolute right to the custody of the child.  Coke, Litt., 74 B, § 103; Dwight on Law of Persons, 242; *Cary* v. *Bertie*, 2 Vernon, 333, 342; *Ryre* v. *Shaftsbury*, 2 P. Wms. 103, 119; *Butler* v. *Freeman*, Ambler's Rep. 301. .

The right of a parent to the custody of a child is superior to the right which is exercised by a guardian.  The parent has what is known as the natural right of guardianship, which means that the law of the sovereign State has recognized the propriety of permitting a parent to control his child to the extent of establishing, as a uniform doctrine governing the exercise of the sovereign right, that, in the absence of a controlling reason for depriving the parent of his so-called natural right, he shall take precedence over others in the matter of guardianship.  But consideration of the historical development of the law of this subject demonstrates that the king, as the source of power and authority over all his subjects, or the State standing in the place of the king, over its citizens, has a power to re-take unto itself the delegated right of custody of an infant, and this power is superior, not only to that of a guardian, but to the power of a parent.

The doctrine of comity between States prevented the Supreme Court of Arizona from depriving the State of New York of the custody of the infant child to which, by the laws of New York, it was entitled.  *Bank of Augusta* v. *Earle*, 13 Pet. 519, 590.

The exercise of comity is an exercise of sovereign power, a determination of sovereign policy.

There is no sovereignty in a Territory; its authorities can exercise no sovereign power, can determine upon no sovereign policy.

The United States is the sovereign of the Territories, and it is for that Government to determine the policy of those Territories.  And in the absence of any legislation in that behalf, it is for this court, in proper cases, to determine what that policy shall be.

The State of New York, having all of the rights of a natural

parent to the control of this child, was entitled to its custody by reason of the finding of the Supreme Court of Arizona that the State of New York was a fit guardian for the child. Dwight on Persons, 243; *Richards* v. *Collins*, 45 N. J. Eq. 283, 286; *Re Finn*, 2 DeGex & S. 457; *Curtis* v. *Curtis*, 5 Jurist (U. S.), 1148.

The facts found by the court below entitled appellant as a matter of right to the custody of the child.

The child, having been abandoned, became a ward of the State, which under such circumstances acts as *parens patriæ*. *Fondham* v. *Pierce*, 141 Massachusetts, 203; *Ex parte Krauss*, 4 Wharton (Pa.), 9; *In re Barry*, 42 Fed. Rep. 113, 118.

The Foundling Hospital, therefore, in all that it did with reference to this child, under its charter, acted as the agent of the State of New York, and as its representative, in carrying out and fulfilling the duties imposed upon the State itself. Whatever interference was had by anyone with the Hospital, while carrying out such duties, was an interference with the agents of that State. *Woodworth* v. *Spring*, 4 Allen, 321, distinguished.

The relation of a State to an abandoned child within its jurisdiction gives it and its agents even a greater right to recognition in a foreign State than in the case of a parent. The State acts upon the assumption that its authority as *parens patriæ* supersedes all authority conferred by birth. *People* v. *Chegary*, 18 Wend. 637, 642; *People* v. *Mercein*, 8 Paige Ch., 47, 69.

It is well settled by the courts of New York that the managers of the institution are not bound by state limits in providing for children committed to them under the statutes. *People* v. *House of Refuge*, 18 How. Pr. 409. The Hospital, therefore, when it sent the child to Arizona, was carrying out its duty in a manner recognized by the laws of the State.

The State of New York having rightfully confided these children to the appellant, the appellant has, irrespective of its agency for the State of New York, a legal right to the custody

and control of the children, even when such children are without the State of New York and within a Territory, because of the powers lawfully vested in it as a corporation. *Am. &* *For. Christian Union* v. *Yount,* 101 U. S. 352.

As a mere matter of legal discretion, upon the facts found, the court should have restored these children to the custody of the appellant. *Seymour* v. *DeLancey,* 3 Cowen, 505, 521.

The fact that the respondent has been appointed guardian of the infant Norton, gives him no legal right to its custody, and presents no legal obstacle to its being restored to the appellant.

*Mr. Walter Bennett,* with whom *Mr. A. A. Hoehling, Jr.,* was on the brief, for appellee:

This being a proceeding by *habeas corpus* to invoke the powers of this court, as *parens patriæ* to award the care, custody and control of a minor child, it is not a case of *habeas corpus* "involving the question of personal freedom" within the meaning of § 1909, Rev. Stat., and this court has no jurisdiction to review the judgment of the Supreme Court of the Territory of Arizona on this appeal. Sec. 1909, Rev. Stat.; *Gonzales* v. *Cunningham,* 164 U. S. 612; *In re Burrus,* 136 U. S. 586; *In re Barry,* 42 Fed. Rep. 113; *King* v. *McLean Asylum,* 64 Fed. Rep. 331; *Clifford* v. *Williams,* 131 Fed. Rep. 100.

The charter of the New York Foundling Hospital gives it no power to place children confided to its care in other homes or institutions, either within or without the State of New York, or to retain any control over them when so placed, except in case of children of suitable age, bound out or apprenticed to some trade, profession or employment.

The Hospital is a foreign corporation in relation to Arizona; as such foreign corporation, or as *de facto* foreign guardian, it could exercise no power or authority over the minor child as a matter of right in that Territory. It has not complied with its laws so as to give it any standing as a corporation, in that it

has not filed in the office of the territorial auditor a copy of its charter or appointment of an agent' upon whom process can be served. Ch. IX, Rev. Stat. Ariz., 1901; *Morgan* v. *Potter*, 157 U. S. 195; *Hoyt* v. *Sprague*, 103 U. S. 613, 631; *Jones* v. *Bowman*, 67 L. R. A. 860; *In re Nichols Est.*, 34 Pac. Rep. 250.

· At the time of the issuance of the writ of *habeas corpus* the· respondent was the guardian of the minor child William Norton, by appointment of the Probate Court, and had qualified and was acting as such guardian. The respondent could, not as a matter of law, be guilty of restraining or depriving his ward of his liberty. *Fitts* v. *Fitts*, 21 Texas, 511; *Ferguson* v. *Ferguson*, 36 Missouri, 197; *Mathews* v. *Wade*, 2 West Va. 464; *Ex parte Miller*, 109 California, 643; *In re Chin Mee Ho*, 73 Pac. Rep. 1002; *In re Lundberg*, 77 Pac. Rep. 156; Church on Habeas Corpus, § 457.

On appeal from the Supreme Courts of the Territories, this court is restricted to an inquiry whether the findings of fact made by the court below support its judgment, and to a review of exceptions duly taken to rulings on admission or rejection of evidence. *Grayson* v. *Lynch*, 163 U. S. 468; *Bear Lake* v. *Garland*, 164 U. S. 1, 18; *Harrison* v. *Pearce*, 168 U. S., 311, 323; *Young* v. *Army*, 171 U. S. 171, 183; *Apache County* v. *Barth*, 177 U. S. 538, 542.

In all cases in which the court has jurisdiction to award the custody of a minor child, the best interests of the child is the controlling consideration. *In re Barry*, 42 Fed. Rep. 113, 121; *Woodworth* v. *Spring*, 4 Allen, 321; *Kelsey* v. *Gollee*, 69 Connecticut, 291; *Lamar* v. *Harris*, 44 S. E. Rep. 867; Church on Habeas Corpus, § 446.

MR. JUSTICE DAY delivered the opinion of the court.

The suit below was begun by a petition for a writ of *habeas corpus*, by the New York Foundling Hospital, a corporation of the State of New York, against John C. Gatti, to command

said Gatti to produce the body of one William Norton, an infant, and to show by what right he held such infant under his custody and control.

The petitioner set out in substance that, by its charter granted by the legislature of New York, it was authorized to receive and keep under its charge, custody and control children of the age of two years or under, found in the city of New York, abandoned or deserted, and left in the crib or other receptacle of petitioner for foundlings, and to keep such children during infancy; that the child William Norton had come to it as a foundling within the terms of its charter; that the petitioner, the fourth of October, 1901, to October 2, 1904, had the care, charge, custody and management of said child; that on or about the first of October, 1904, petitioner placed the child in the home of a certain person in the town of Clifton, county of Graham, Territory of Arizona, to be held and cared for by the said person in said home temporarily, and at all times subject to the supervision of the petitioner and its officers and agents; that at such time the petitioner had officers and agents of trained experience at the town of Clifton, with instructions to supervise said child and the care and management of it while temporarily in the charge and care of the said person as aforesaid; that at all times the petitioner had the right at will to withdraw the child from the care and charge of the said person and retain the custody thereof, and continue to keep the said child in pursuance of law under its care, charge, custody and management during the term of its infancy as aforesaid.

Upon information and belief it charges that thereafter, and on or about the second day of October, 1904, one John C. Gatti, residing at the said town of Clifton, his servants and employés, unlawfully and with force and violence entered into the house of the said person, where at the time of said unlawful entrance the said child William Norton was, having been placed there as aforesaid, and forcibly, unlawfully, and without right took possession of said William Norton and removed him thence to

the custody of the said John Gatti. That the said child has ever since said day been in the custody and under the control of the said Gatti, and that the said child is now restrained of its liberty by the said Gatti, without the consent or license of the petitioner and against its desire, intention and protest, and in violation of its rights under the laws of the State of New York, of the United States and of the Territory.

The respondent made return and claimed to be entitled to the custody of the child named in the petition as the legally appointed guardian, duly qualified as such under letters of guardianship issued by the Probate Court of Graham County, Arizona. And further set forth in the return that the child in question is a white, Caucasian child; that the petitioner on or about the first day of October, 1904, brought the said child to the Territory of Arizona and abandoned him to the keeping of a Mexican Indian, whose name is unknown to the respondent, but one financially unable to properly clothe, shelter, maintain and educate said child, and, by reason of his race, mode of living, habits and education, unfit to have the custody, care and education of the child; that said person, to whom petitioner is alleged to have abandoned said child, voluntarily surrendered it to certain persons, who thereupon placed it in the care, custody and control of respondent, who is a fit person for that purpose, and it will be to the best interest of the child that he be permitted to remain with the respondent, whose purpose and intention it is to rear, maintain, educate and provide for said child as though he were his own.

The petitioner traversed the return, and denied that the said minor was in the care, custody and control of the respondent by virtue of letters of guardianship, and alleged that the said minor has been in the care, custody and control of respondent Gatti by force and violence, and without authority of law or of any person legally authorized to place the child in the custody of the respondent.

The case came to trial on the issues of fact raised in the petition, return and traverse thereof by the petitioner, and

the testimony having been heard in open court, a final order was made, adjudging the said William Norton to be a minor of the age of two and one-half years, and that his best interests required that the said John C. Gatti have the care, custody and control of said infant, who was thereupon remanded to the care, custody and control of said respondent.

In the view which we take of the jurisdiction of this court to entertain the appeal in this case it is unnecessary to consider the elaborate findings of fact made in the Supreme Court of Arizona as the basis of its order, further than they bear upon the question of jurisdiction to entertain this appeal.

It was found that children were taken into the Territory by the representatives of the Foundling Hospital, to remain there and be placed in suitable homes in Arizona, but, by imposition practiced upon the agents of the society, the children were distributed among persons wholly unfit to be instrusted with them, being, with one or two exceptions, half-breed Mexican Indians of bad character. That thereupon a committee was appointed from the citizens resident of the vicinity, who visited the homes of the persons having possession of the children, stating to them that they had been appointed by the American residents to take possession of the children, who were then voluntarily surrendered by such persons. The children were taken charge of by certain good women, and afterwards the child William Norton was given to the respondent, who has since had his care, custody and control. This was done without the consent of the society or its agents. Afterwards letters of guardianship were issued to the respondent by the Probate Court of Graham County, Arizona. The petitioner took an appeal from the order granting the letters of guardianship to the District Court of the county. Pending this appeal the petition for the writ of *habeas corpus* was filed.

The court, acting upon the principle that the best interests of the infant are controlling, awarded the care and custody thereof to the respondent, 79 Pac. Rep. 231, and the petitioner took an appeal to this court.

The jurisdiction of the Supreme Court of the Territory to issue the writ of *habeas corpus* is not called in question in this case.

We are met at the threshold with an objection to the appellate jurisdiction of this court. The appeal in such cases is allowed under cover of section 1909, Rev. Stat. *Gonzales v. Cunningham,* 164 U. S. 612. That section provides:

"SEC. 1909. Writs of error and appeals from the final decisions of the Supreme Court of either of the Territories of New Mexico, Utah, Colorado, Dakota, Arizona, Idaho, Montana and Wyoming shall be allowed to the Supreme Court of the United States, in the same manner and under the same regulations as from the Circuit Courts of the United States, where the value of the property or the amount in controversy, to be ascertained by the oath of either party, or of other competent witnesses, exceeds one thousand dollars, except that a writ of error or appeal shall be allowed to the Supreme Court of the United States from the decision of the Supreme Courts created by this title, or of any judge thereof, or of the District Courts created by this title, or of any judge thereof, upon writs of *habeas corpus* involving the question of personal freedom."

The question is, therefore, is this a writ of *habeas corpus* "involving the question of personal freedom"? That this section of the statute does not permit appeals from all cases in which the writ is issued is manifest in the use of language in the act, specifically limiting the right of review in this court to cases of writs which involve the question of personal freedom.

A brief consideration of the history and nature of the writ will, we think, make manifest the purpose of Congress in using this restrictive language giving the right of appeal. The writ is usually granted in order to institute an investigation into the illegal imprisonment or wrongful detention of one alleging himself to be unlawfully restrained of his liberty.

The jurisdiction is conferred to enable the cause of restraint

to be inquired into, and the person imprisoned or wrongfully deprived of freedom restored to liberty.

The subject was discussed by Mr. Justice Miller in the case of *In re Burrus*, 136 U. S. 586, in which it was held that a District Court of the United States has no authority to issue a writ of *habeas corpus* to restore an infant to the custody of its father when unlawfully detained by its grandparents.

Appended to that case, and printed by request of the members of the court, is an instructive opinion by Judge Betts, delivered in the case of *In re Barry*, United States Circuit Court for the Southern District of New York, in which he reached the conclusion that a Circuit Court of the United States had no jurisdiction in *habeas corpus* to entertain a controversy as to the custody of a child when the father sought to compel the mother to deliver it to him, a question not decided in *In re Burrus*. In the course of the discussion the learned judge points out the origin of the writ as a means of relief from arrest or forcible imprisonment, and its growth in later use as a means of determining the custody of children:

"There is no reason to doubt that originally the common-law writ was granted solely in cases of arrest and forcible imprisonment under color or claim of warrant of law.

"As late as 2 James II, the court expressly denied its allowance in a case of detention or restraint by a private person (*Rex* v. *Drake*, Comberback, 35, 16 Viner, 213); and the *habeas corpus* act of Charles II, which is claimed as the Magna Charta of British liberty, has relation only to imprisonment on criminal charges. 3 Bac. Ab. 438, note.

"It is not important to inquire at what period the writ first was employed to place infant children under the disposal of courts of law and equity. This was clearly so in England anterior to our Revolution (*Rex* v. *Smith*, 2 Strange, 982; *Rex* v. *Delaval*, 3 Burrow, 1434; *Blissett's case*, Lofft. 748); and the practice has been fully confirmed in the continued assertion of the authority by those courts unto the present day. (*King* v. *Demanneville*, 5 East. 221; *Demanneville* v.

*Demanneville,* 10 Ves. 52; *Ball* v. *Ball,* 2 Sim. 35; *Ex parte Skinner,* 9 J. B. Moore, 278; *King* v. *Greenhill,* 4 Ad. & El. 624); and this indifferently, whether the interposition of the court is demanded by the father or mother. (4 Ad. & El., 624 *ubi sup.;* 9 Moore, 278 *ubi sup.*)

\*     \*     \*     \*     \*     \*     \*     \*

"The authority to take cognizance of the detention of infants by private persons, not held under claim, or color, or warrant of law, rests solely in England on the common law. It is one of the eminent prerogatives of the crown, which implies in the monarch the guardianship of infants paramount to that of their natural parents. The royal prerogative, at first exercised personally *ad libitum* by the King (12 Pet. 630), and afterwards, for his relief, by special officers, as the Lord High Constable, the Lord High Admiral and the Lord Chancellor, in process of time devolved upon the high courts of equity and law, and in them this exalted one, of allowing and enforcing the writ of *habeas corpus ad subjiciendum,* became vested as an elementary branch of this jurisdiction. In the performance, however, of this high function in respect to the detention of infants by parents, etc., the court or judge still acts with submission to the original principle, out of which it sprang, that infants ought to be left where found, or be taken from that custody and transferred to some other, at the discretion of the prerogative guardian, and according to its opinion of their best interests and safety."

It was in the exercise of this jurisdiction as *parens patriæ* that the present case was heard and determined. It is the settled doctrine that in such cases the court exercises a discretion in the interest of the child to determine what care and custody are best for it in view of its age and requirements. Such cases are not decided on the legal right of the petitioner to be relieved from unlawful imprisonment or detention, as in the case of an adult, but upon the court's view of the best interests of those whose welfare requires that they be in custody of one person or another. In such cases the question

of personal freedom is not involved except in the sense of a determination as to which custodian shall have charge of one not entitled to be freed from restraint. As was said by Sharkey, C. J., in 6 How. (Miss.) 472:

"An infant is not entitled to his freedom; an adult is. When a *habeas corpus* is granted to an adult, the object is to inquire whether he is legally restrained of his liberty, because if he is not, he must be set free, for the plain reason that by law he is entitled to his freedom. But if the court is also to set the infant free, they give him a right to which he is not entitled, and deprive the parent or guardian of a right to which he is entitled; to wit, the custody of the infant."

We think that such considerations as these induced Congress to limit the right of appeal to this court in *habeas corpus* cases. The discretionary power, exercised in rendering the judgment, the ability of local tribunals to see and hear the witnesses and the rival claimants for custody of children, induced, in our opinion, the denial of appeal in such cases as the one at bar, as distinguished from those of a different character, where personal liberty is really involved, and release from illegal restraint, a high constitutional and legal right not resting in the exercise of discretion, is sought, in which an appeal is given to this court.

In the present case there was no attempt to illegally wrest the custody of the child from its lawful guardian while temporarily in the Territory of Arizona. The society voluntarily took the child there with the intention that it should remain. Through imposition the child was placed in custody of those unfit to receive or maintain control over it, and, as above stated, came into the custody and possession of the respondent.

The child was within the jurisdiction of the court under such circumstances that rival claimants of the right of custody might invoke the jurisdiction of a competent court of the Territory to determine, not the right of personal freedom, but to which custodian a child of tender years should be committed. *Woodworth* v. *Spring*, 4 Allen, 321.

We do not think that the case comes within the provisions of section 1909, permitting an appeal to this court only in cases involving the question of personal freedom.

*The appeal will be dismissed for want of jurisdiction.*

MR. JUSTICE BREWER took no part in the decision of this case.