# Richmond

SAMUEL TURNER AND ALICE A. TURNER v. CHILDREN'S
HOME SOCIETY OF VIRGINIA, INCORPORATED.

March 24, 1932.

Present, All the Justices.

The opinion states the case.

*Thomas A. Williams* and *L. C. O'Connor*, for the plaintiff in error.

*Christian & Barton*, for the defendants in error.

HUDGINS, J., delivered the opinion of the court.

The Children's Home Society of Virginia, for convenience hereinafter called the Society, filed a petition for a writ of *habeas corpus*, praying that Samuel Turner and Alice A. Turner, his wife, hereinafter called petitioners, be required to return to the Society, Anne Marie DeShazo, an infant. From an order granting the writ of *habeas corpus* restoring the custody of the infant to the Society, the petitioners obtained from this court a writ of error.

The Society based its right to the custody of the infant

on the following grounds: That it was incorporated under the Virginia law to "care for children and approved by the State Board of Public Welfare;" that on the 30th day of November, 1929, the infant, then thirteen months of age, was committed to its care by the Circuit Court of Dinwiddie county; that previous to that date, the petitioners had filed a written application with the Society for a child to be placed in their home and that one or more children had been tried by them and returned because unsatisfactory; that on January 13, 1930, Anne Marie DeShazo was placed with the petitioners, with whom she has since remained; that subsequent to the above date the Society, after careful investigation, had concluded, for reasons satisfactory to it, that the best interests of the infant required that its actual custody be restored to the Society; that the petitioners were requested to restore the custody of the infant, but they had neglected or refused so to do; and that on July 13, 1931, these proceedings were instituted.

In their answer, petitioners do not deny the allegations made by the Society but allege, and on the hearing offered to prove, (1) that when the infant was delivered to them it was weak and unhealthy; that as a result of the care and attention given it by them it became healthy and strong; (2) that petitioners had given, and expected to continue to give, the infant the best of attention; that they were very much attached to it and it to them; that they had no children of their own and treated this child as if it were their own flesh and blood; (3) that petitioners were morally fit and financially able to rear the child; (4) that its best interest would be promoted by permitting it to remain with them; (5) that they were willing and anxious to adopt the infant, but the Society, without giving any reason, had refused its consent thereto; that the Society was insolvent and had no place in which to house or care for the infant.

The trial court refused to hear any evidence tending

to prove the allegations of the answer, and held that the opinion of the Society as to what was for the best interests of the child was binding upon the court. This conclusion is based upon the provisions of Code, section 1935f, which reads as follows:

"Every agency placing a child in a home shall enter into a written agreement with the person taking the child, which agreement shall provide that the agency shall have access at all times to such child and to the home in which he is living, and for the return of the child by the person taking him whenever in the opinion of the agency, or in the opinion of the State Board of Public Welfare, the best interests of the child shall require it. The provisions of this section shall not apply to children who have been legally adopted."

This section requires the Society and other similar agencies to place children committed to their care in homes upon condition that the agency shall have access both to the child and to the home, with the understanding that the child shall be returned whenever the agency or the State Board of Public Welfare deems that course best for the interests of the child.

The legislature has power to impose upon parties receiving the custody of one of the wards of the State such conditions as it may deem prudent and wise, unless the condition imposed contravenes some Constitutional limitation.

■■ The petitioners contend that the section is null and void for two reasons: (1) Because it violates section 11 of the Virginia Constitution. This section provides that "no person shall be deprived of his property without due process of law." No property or natural right of the petitioners is involved in this litigation. (2) It is contended that the section delegates to an administrative body legislative powers, in that it gives to the Society the "sole discretion as to what is for the best interests of the child, with no limitation or regulation of any kind." This contention

requires a brief review of the statutes dealing with neglected or dependent children.

The infant here in question, deprived of parental care through no fault of its own, has been judicially determined a ward of the State. The legislature, by the enactment of chapters 78, 79 and 79A (sections 1905–1935aa), has made detailed provision for the discharge of the duty which the State owes to such children and has placed them under the guardianship of the court in whose jurisdiction they are found. The State Board of Public Welfare is required to investigate the fitness of all persons or corporations who desire to aid these unfortunate children and to issue license annually to those who satisfy the board that they are fit and proper persons to have the care, custody and placing of such children in homes. The duty of this board to the child is never surrendered to any agency. Not only must the agency make periodical reports to the board on the condition of each child, wherever he may be placed, but the board itself is required within ninety days from the receipt of notice that a child has been placed with a private family to investigate the child in the home and ascertain for itself whether the home is a fit and suitable place and that the child is contented therein; if in the opinion of the board it is for the best interests of the child, it may order its removal. It not only has supervision over the child and the agency, but it may revoke, for cause, any license issued to such agency.

An examination of the provisions of these chapters reveals that the welfare of such children is the paramount object in this legislation, and that the State has nowhere surrendered absolute control of such children to any agency. The commitment of a child to a licensed agency is not final, but may be modified or revoked whenever the court which entered the order of commitment is of opinion that the welfare of the child will be promoted by such action. That part of section 1910 dealing with this phase of the subject reads as follows:

"Any order made by the court or any commitment to any such private society, association or institution shall be subject to modification or revocation from time to time, as the court may deem to be for the welfare of such child; the duty being constant upon the court to give all children subject to its jurisdiction such oversight and control as may conduce to the welfare of the child and the best interests of the State."

■ Code, section 1935f is only one of many safeguards the legislature has prescribed for the care of wards of the State committed to licensed agencies, and applies only between parties receiving the temporary custody of such wards from an agency and the agency. When read in connection with section 1910 it is apparent that the opinion of the agency is binding only in jurisdictions other than that of the committing court. The final determination of the welfare of such ward is in the court under whose guardianship it remains. This section, construed in conjunction with other provisions of the chapters mentioned, does not delegate to the Society the "sole discretion of what is for the best interests of the child."

■■ The Society proved, or it was admitted, that it was approved or licensed by the State Board of Public Welfare. This established its fitness to receive and care for the infant. The order of the Circuit Court of Dinwiddie county committing the infant to the custody of the Society established its legal right to that custody. When the temporary custody of the infant was given to the petitioners they were charged with knowledge of the fact that the Society had a right to terminate the custody at will at any time prior to the beginning of proceedings for the adoption of the child. The Hustings Court of the city of Richmond was bound by the order of the Circuit Court of Dinwiddie county, which order remains in full force and effect until modified or revoked by that court or by statute.

■ The petitioners claim that the order of the Circuit

Court of Dinwiddie county is not binding upon the Hustings Court of the city of Richmond because of the provisions of chapter 295 of the Acts of the General Assembly of 1922, page 493 (Michie's Code, section 1930c), the title of which is "an act to protect reformative, corrective and disciplinary institutions * * * and minors committed to or held in such institutions; also prescribing penalties for violation of this act."

Section 2 of this act provides that "any person desiring to contest the right of such institution to the custody of such minor shall do so only by *habeas corpus* proceedings, which may be instituted either in the county or corporation from which the minor was taken or in the city of Richmond. Upon the hearing of such proceeding the court may inquire into and determine the justice of the commitment to such institution, but shall not discharge such minor merely because of defects in the proceedings leading to such commitment, or in the commitment itself; but if such defects appear, the court shall proceed to correct such defects, and shall determine the matter according to the very right thereof."

Controversies within the terms of the act are those involving the custody of children committed to the institutions designated, when such institutions are parties defendant. In such controversies the order of the committing court is modified to the extent stated, but the provision of this act has no application to the proceedings under review. It is nowhere proven that the Society is either reformative, corrective or disciplinary, nor is the Society a defendant in these proceedings.

██ Code, section 5928, confers upon the Hustings Court of the city of Richmond the same jurisdiction of proceedings by writ of *habeas corpus* as is possessed by the circuit courts. This is the section which gives that court jurisdiction of the subject matter.

For the reasons stated, the judgment of the trial court is affirmed.                                        *Affirmed.*