**KELL v. TEXAS CHILDREN'S HOME & AID SOC.**

No. 14722.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 9, 1945.

Rehearing Denied Jan. 25, 1946.

Mays & Mays, Dave Miller, and Stanley Bransford, all of Fort Worth, for appellant.

Simon, Wynn, Sanders & Jones, of Fort Worth, for appellee.

BROWN, Justice.

This is an unusual child custody case. The appellee, Texas Children's Home & Aid Society, filed a petition for a writ of habeas corpus in the 96th Judicial District Court in which the petition alleged that it is duly incorporated under the laws of the State of Texas, "engaged in work throughout the State of Texas for the benefit of orphans, dependent and neglected children," and that early in the year 1944, the defendant (appellant here) R. Ned Kell and his wife applied to plaintiff in writing to have an infant girl child placed with them in their home with a view to the adoption of such child; that in such application Kell represented that the members of his household were in good health; that the said infant child, Katrine, was born in Fort Worth on December 27, 1944; "that on the 8th day of January, 1945, the natural parent or parents of said child voluntarily released possession and control of said child to the plaintiff, and in connection with such transfer transferred parental authority, control and custody over such child to plaintiff until said child should be adopted, and thereafter authorized plaintiff to transfer or release such parental authority to the adopted parent or parents; that plaintiff promptly, after receiving said child, placed said child in the home of defendant and defendant's wife in response to said above-mentioned application"; and it is further alleged that defendant's wife was then suffering from a serious malady which was then unknown to plaintiff, and that she died therefrom on March 10, 1945; that upon learning of her demise plaintiff made demand upon the defendant that he return said infant to plaintiff (the child not having been adopted by legal procedure), and that it was the intention of plaintiff to place the child in some other home which may offer equal or better benefits and conditions as those to which the defendant's home appeared to offer at the time defendant applied to plaintiff for an infant girl; that defendant has failed and refused to return the child to plaintiff, "and in this connection it is to the best interest of said child that it be returned to the plaintiff." The petition then alleges that the child is illegally confined and restrained in her liberty in defendant's home "and that plaintiff is lawfully entitled to the custody of said minor child."

The writ was promptly issued and served on the defendant and he answered, alleging that the trial court should not proceed with the cause for the reason that there is lacking the necessary parties to the suit, namely, the parents of the child, who are unknown to defendant; and defendant urged the following exceptions to the petition: (1) That same shows that the petitioner is not seeking the care and custody of the child with a view of caring for, looking after and raising it, but merely to obtain its present custody in order that plaintiff may, sometime in the future, place the child with someone else; (2) because the petition shows that the alleged agreement made by the child's parents with peti-

tioner is illegal in that the petitioner could not, under such agreement or under the law, give their legal consent for anyone to adopt the child, and such parents had no authority, nor did the alleged agreement give any legal authority or confer any legal right upon petitioner to adopt or to have the child adopted by anyone, or to transfer its parental authority to anyone else who adopted the child; (3) that the petition fails to allege that defendant is not a proper, fit and suitable person to have the care and custody of the child, and said pleading fails to allege any reason why defendant should not have such care and custody other than the alleged agreement which is of no legal force or effect; (4) and that the allegation to the effect that it is for the best interest of the child that it be returned to petitioner is a mere conclusion of the pleader and states no reason why it is for the best interest of the child that such be done; (5) and because the petition does not seek the determination of the issue of the care and custody of the child but is a mere action to obtain possession of the child, all of which is contrary to public policy.

The answer then avers that the child has been in his care and custody since its infancy, that he has had it properly cared for, that his mother looks after the child and that his mother is a proper person to look after and care for the child; that he and his mother love the child, and if the custody is awarded him, his mother will continue to care for it; that he intends to adopt the child if he can lawfully do so; that he has no child of his own and has a home and ample means whereby he can give the child splendid advantages and care and that it is for the best interest that its care and custody be awarded to him.

The cause went to trial before the court; all exceptions were overruled over defendant's objections, the evidence was heard and the court rendered judgment, in substance, as follows: That no legal cause has been shown for the restraint of the child, which has been and now is illegally confined and restrained in her liberty; "that at and before the time of the suing out of the writ, as well as at the time of the hearing, legal custody of said infant child was in the Texas Children's Home & Aid Society; that the home of the defendant is not a normal home for this infant child; and that it is to the best in-

terest of said infant child that she be returned to the Texas Children's Home & Aid Society."

The judgment then orders the defendant to deliver the child to said petitioner.

From this judgment Kell appeals and the points presented are bottomed on the overruling of his special exceptions and on certain assignments of error, including the complaint of the absence of alleged necessary parties and the rulings of the trial court in admitting and in refusing to admit certain testimony.

Under Article 1302, Sec. 4, of Vernon's Civil Statutes of Texas, a corporation may be formed for "the protection of women and children."

Appellee, to which we will refer as The Home, alleged that it is a corporation duly incorporated under the laws of Texas and engaged in work for the benefit of "orphans, dependent and neglected children."

■ The allegations not being denied under oath as required by Rule 93, Texas R.C.P., we take it as established that the petitioner is duly incorporated.

■ Lawful custody of a child may be given to such an institution as The Home in one of two ways: By the voluntary delivery of the child to it by its parent or parents having the legal right to its custody and control, or if and when a court of competent jurisdiction has rendered judgment finding the child a delinquent, or neglected and dependent child, and the court renders judgment awarding the care and custody to such institution.

■ In either of the situations mentioned, the care, custody and control of the child is lawfully given to the institution and such may not be disturbed by any person other than the natural parent or parents; and then only upon a proper showing.

While the evidence advanced on the trial of the instant case is wholly silent on the issue of how the petitioning institution ever obtained the care and custody of the child, we are confronted with the question of how and from whom did appellant obtain its care and custody.

■ It is undisputed that appellant only has such care and custody as was given him by The Home. If the right of care and custody was vested in him he obtained this right from The Home, and regardless of the lack of proof of any right of

care and custody in The Home, it is our opinion that appellant, under such facts as were testified to, and the pleadings of appellant, cannot be heard to question the right of The Home to the care and custody of the child, when it delivered the child to him.

It is no longer an open question as to the propriety of raising the issue of the proper care, custody and control of an infant by means of a writ of habeas corpus, nor is it to be doubted that such a proceeding puts in issue such matter and the necessarily associated issue of what is for the best interest of the child. Vol. 21 Tex.Juri., p. 473; Vol. 23 Tex.Juri., p. 710, para. 17. Vol. 25 American Juri., p 202, Sec. 78, announces the same rule, and Section 79 of such text states: "In a proper case the writ may be sued out by a tutor or guardian deprived of the custody of his ward, or by corporations and societies which have, in a legal manner, acquired the right to the custody of the children." The text cites: New York Foundling Hospital v. Norton, 9 Ariz. 105, 79 P. 231, 7 L.R.A., N.S., 306, appeal dismissed in New York Foundling Hospital v. Gatti, 203 U.S. 429, 27 S.Ct. 53, 51 L.Ed. 254.

In Vol. 31 Corpus Juris, p. 933, Sec. 12, this language is used: "Any pleading which shows upon its face that the welfare of an infant requires that an order be made in regard to his custody is sufficient."

The text cites Green v. Green, Tex. Civ.App., 146 S.W. 567, writ dismissed. Furthermore, the defendant's pleading raised the issue. We cannot doubt but that the trial court in the instant suit had before it the question of the care, custody and control of the child and what should be done for the best interest of the child.

The trial court has determined that it is for the best interest of the child that its care, custody, and control be given to the institution from which appellant received it.

The character of discretion lodged in the bosom of the court, in such case as is before us, may not be disturbed by an appellate court unless that discretion is abused.

There is nothing in the record before us to suggest such abuse of discretion.

Here is a situation where a splendid citizen and his equally fine wife, both being middle-aged and childless, desired to adopt a baby girl, and a baby only a few days old is delivered to them by the Home. Unfortunately the wife "passed away" and left appellant with the responsibility of looking after and caring for the infant. Appellant's mother lives in his home. She is 66 years old and the care of the infant is left to her.

It must be borne in mind that appellant has not adopted the child.

There is and can be no question of the high plane on which appellant and his mother live. There can be and is no question of the fitness of appellant's home and his ability to give the child those advantages that are invaluable.

But the trial court was presented with the problem of whether it is for the best interest of this little baby to give its care, custody and control to a widower, 45 years of age, and dependent upon his 66 year old mother for someone to look after the baby, or whether the best interest of such baby required the court to award such care and custody to the institution from which appellant received it and to look to such custodian to see that the child is placed in a family for adoption, where the proposed adoptive parents are young and of such age as those who normally bear children.

The trial court has spoken. The evidence discloses nothing that indicates an abuse of his discretion. Such judgments as the one before us are not easily rendered, nor are they easily upheld by a reviewing court. We are all not unmindful of the tug at the heart cords of this splendid citizen who desired and still desires to adopt this infant, and we fully appreciate the fact that there has been born in his heart a warm affection for this baby, but neither the trial court nor the reviewing court may consider these emotion provoking facts. The sole question is, under all of the facts and circumstances, what is best for the child?

The natural parents are not necessary parties to this proceeding. Turner v. Children's Home Society of Virginia, Inc., 158 Va. 406, 163 S.E. 399, 80 A.L.R. 1125. It is held that such an institution, as is appellee here, stands in loco parentis to the infant. See American Juri., Vol. 27, p. 827, Section 105; Child Saving Institute v. Knobel, 327 Mo. 609, 37 S.W.2d 920, 76 A. L.R. 1068; In re Williams, 77 N.J.Eq. 478, 77 A. 350, 79 A. 686.

904

The trial court committed no error in permitting the witnesses, who may be classified as experts because of their education and experiences in placing children in homes for adoption, to testify in the instant suit. While the trial court could not be bound by such testimony, nevertheless, we believe it is admissible on the issue of the best interest of the infant.

Nor was there error committed in excluding the testimony seeking to disclose the names of the parents. Obviously the parents are not concerned with the proceedings before us and the trial court, and it appears to us that such evidence is not only irrelevant but could have a harmful effect.

We feel compelled to affirm the judgment of the trial court, and it is so ordered.

McDONALD, C. J., not participating.