STATE OF NEBRASKA EX REL. SHIRLEY COCHRANE, APPELLEE AND CROSS-APPELLANT, V. CARMEN BLANCO, APPELLANT AND CROSS-APPELLEE.

128 N. W. 2d 615

Filed May 22, 1964. No. 35623.

Wright, Simmons & Hancock, for appellant.

Bertrand V. Tibbels, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

This is a habeas corpus action by which the plaintiff, Shirley Cochrane, seeks the custody of her two children from her mother, Carmen Blanco. The two children involved in the litigation are Carmello Blanco and Nancy Gomez, now 15 and 11 years of age, respectively. The district court found for the plaintiff, awarded her the custody of both children, and the defendant grandmother appeals.

Before we proceed to a discussion of the merits of this case, a preliminary jurisdictional question raised by plaintiff on cross-appeal should be considered and disposed of. Plaintiff, in her petition, simply alleged that she is the mother of the children; that she was awarded the custody of Carmello by virtue of a divorce decree from one Ray Larez; and that she was awarded the custody of Nancy in a decree in a paternity suit against the father Gomez. Without further pleading, she alleged and asserted that she is entitled to the custody of the two children. The defendant, in response, alleged that she has had the custody of the children since about the time of their birth; that she has raised, nurtured, and cared for them; that she is the proper person to have their custody; and that Shirley, the mother, has forfeited and abandoned any rights she might have had to their custody. Plaintiff moved to strike this response; and continuously asserted by various motions and objections to the evidence that under the First and Fourteenth Amendments to the Constitution of the United States, the trial court was deprived "of any jurisdiction to examine into the question of the best interests of the children, or parental default," unless it had been previously established by due process of law that the parent had forfeited the right. In 21 propositions of law, plaintiff contends, "that the determination of all questions as to what is for the best interests of their children is one of the liberties guaranteed to the parents by the Due Process Clause of the Fourteenth Amendment * * *; and that the determination of the parents of the question of what is for the best interests of their children is final and conclusive upon all departments of state." Brevity forbids an examination of all of plaintiff's authorities and detailed arguments. All questions with regard to state court jurisdiction, on habeas corpus, to inquire into and to change or control custody of children within their territorial borders, as between parents or as to third persons, have long since been

laid to rest. In In re Burrus, 136 U. S. 586, 10 S. Ct. 850, 34 L. Ed. 500, a Nebraska habeas corpus case involving a contempt citation in a custody controversy between a father and grandfather, the United States Supreme Court passed on the issues of state court jurisdiction in habeas corpus. The court said: "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States. As to the right to the control and possession of this child, as it is contested by its father and its grandfather, it is one in regard to which neither the Congress of the United States nor any authority of the United States has any special jurisdiction. *Whether the one or the other is entitled to the possession does not depend upon any act of Congress, or any treaty of the United States or its Constitution.*" (Emphasis supplied.) See, also, New York Foundling Hospital v. Gatti, 203 U. S. 429, 27 S. Ct. 53, 51 L. Ed. 254.

The extent and nature of the jurisdiction of the district court and of this court in matters involving the determination of custody of minor children are comprehensively set out in Hanson v. Hanson, 150 Neb. 337, 34 N. W. 2d 388. This was a habeas corpus custody dispute between a mother and the grandparents, as we have here. The court said: " 'In general, the writ of habeas corpus has been extended to, and may be used in, controversies regarding the custody of infants. Such proceedings are governed by considerations of expediency and equity, and should not be bound by technical rules of practice.' 39 C. J. S., Habeas Corpus, § 41, p. 568. * * * 'After the court's jurisdiction has been invoked by habeas corpus petition seeking custody of a child, the child is a ward of the court and its welfare lies in the hands of the court; * * *.' 39 C. J. S., Habeas Corpus, § 41, p. 570. See, also, 25 Am. Jur., Habeas Corpus, § 80, p. 204; Kaufmann v. Kaufmann, 140 Neb. 299, 299 N. W. 617. In re Application of Schwartzkopf, 149 Neb. 460, 31 N. W. 2d 294; Brandon v. Brandon, 154 Ga. 661,

115 S. E. 115; Kline v. Kine, 57 Iowa 386, 10 N. W. 825; Sanders v. Sanders, 223 Mo. App. 834, 14 S. W. 2d 458; Rodgers v. Rodgers, 56 Kan. 483, 43 P. 779. * * * The foregoing authorities are clearly indicative that habeas corpus is the proper remedy to try the issues of the custody and welfare of minor children in a case such as the one at bar."

It is stated in In re Application of Reed, 152 Neb. 819, 43 N. W. 2d 161: " 'The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the child, but it arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine its status and the custody that will best meet its needs and wants, and residence within the State suffices even though the domicile may be in another jurisdiction.' The People v. Wingate, 376 Ill. 244, 33 N. E. 2d 467."

Plaintiff cites Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446, and related United States Supreme Court cases. The Meyer case held that a Nebraska statute forbidding the teaching of the German language in public schools was unconstitutional. The holding in the Meyer case has no bearing on the issues in this case. We do not doubt that the parents or legal custodian of minor children have a constitutional right to guide and control the care, education, religious training, and the other normal attributes of custodial responsibility. But, there is nothing in any of the plaintiff's authorities that invades or abridges the power of the state, under the doctrine of parens patriae, to scrutinize all of the circumstances surrounding the care and upbringing of children and, under applicable rules, to determine where the custody and control of a child shall be. All of the cases cited hereinbefore support and establish this general principle. There is no merit to plaintiff's cross-appeal. The district court had original and complete jurisdiction and power to in-

quire into and scrutinize the facts and circumstances surrounding the custody of the two children involved herein and to make a proper order for their custodial disposition.

Plaintiff further contends, in effect, that the previous adjudications granting her custody of the boy in the divorce case and custody of the girl in the paternity case are final, conclusive, and binding, and that the grandmother has no right to defend, resist, and establish her right to custody. The same contention was made in Barnes v. Morash, 156 Neb. 721, 57 N. W. 2d 783, a habeas corpus proceeding between a mother and the paternal grandmother. The court said: "It has also been held that a prior divorce decree determining custody, although binding as between the parents, is not a bar to a subsequent habeas corpus proceeding to determine custody, since the decree did not consider the position of the state as parens patriae and the welfare of the child. * * * The paternal grandmother was not a party to the divorce action. She was not required to intervene in such action with reference to the custody of the child here in controversy. She is not in a position to attack the validity of the divorce decree in this action. However, as will become apparent later in the opinion, in an action in habeas corpus involving the custody of a child, she is entitled to resist and defend the right to retain the custody of the child."

There is much discussion and argument in the briefs filed herein as to the applicable rule to be applied in measuring the evidence. The balancing of the best interests of the children, as against the custodial right of the parent in controversies with grandparents or third parties, was the issue met and decided in the recent case of Raymond v. Cotner, 175 Neb. 158, 120 N. W. 2d 892. This was a habeas corpus action between a father and the maternal grandparents, who had cared for the child after the father's previous divorce from the mother. A full discussion of the history and variance in our

holdings on this problem is contained in the majority, dissenting, and concurring opinions in Raymond v. Cotner, *supra*. In that case we held as follows: "The applicable law to a case such as we have before us may be summarized as follows: When the custody of a minor child is involved in a habeas corpus action, the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent. The courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right. Williams v. Williams, 161 Neb. 686, 74 N. W. 2d 543; Caporale v. Hale, 169 Neb. 751, 100 N. W. 2d 847. The right of parents to the custody of minor children of tender years is not to be lightly set aside and the court may not deprive parents of such custody unless they are shown to be unfit to perform the duties imposed by that relationship, or have forfeited their right. * * * It is true that the rights of a father to the custody of his minor child, upon the death or unfitness of the mother to whom legal custody was granted, may be defeated by his abandonment of the child, his complete indifference to its welfare, or by his own unfitness to have its custody. * * * Plaintiff has not failed to support the child. He has not abandoned the child. *He has not voluntarily relinquished the child to the Cotners with the expectation that they would furnish care and support.* We think the evidence shows that plaintiff is a fit and proper person to have the custody of his child and that he has done nothing that would sustain a finding that he had forfeited his superior right to her custody. * * * *It was not because of any consent or abandonment of the child on the part of the father.*" (Emphasis supplied.)

Under the above rules announced by this court, we now proceed to an examination, to the extent necessary, of the evidence in this case. We have examined the

record and come to the following conclusions on the facts on trial de novo.

The boy, Carmello Blanco, was born August 8, 1948, and is now 15 years of age. The girl, Nancy Gomez, was born August 1, 1952, was an illegitimate child, and is now 11 years of age. Plaintiff, Shirley Cochrane, is the mother of these children and the daughter of the defendant, Carmen Blanco. Shirley was married to one Larez, who left her about 4 to 6 months after Carmello's birth. At that time, plaintiff left Carmello with Carmen Blanco, the defendant, who has cared for him since then. Until the birth of Nancy in 1952, the record is not clear as to Shirley's activities. During a portion of this time she stayed in the family home with her mother, Carmen, and her father who was then living. It appears that she worked as a waitress, that she worked in the fields with the family, that she provided something toward the expenses of the home, and that she was home at night some or most of the time. She went with various men from time to time. But, it is abundantly clear that during this period the total responsibility for the actual care of Carmello was with Carmen, the grandmother. About a year, or a year and a half, before the birth of Nancy in 1952, plaintiff began going with one Gomez. She was away from home "off and on" during this period of time, and it appears was not home very much. She was still married to Larez and became pregnant with Nancy by Gomez. Shortly before Nancy's birth, plaintiff returned home, and it appears she lived at home until she married her present husband, Carl Cochrane, on July 24, 1954. Nancy was born August 1, 1952, and was left with Carmen, the grandmother. She has been in the grandmother's home since then. In the spring of 1953 the plaintiff brought a paternity suit against Gomez and several weeks later a divorce action against Larez, the father of Carmello. These actions ripened into judgments for the plaintiff, and she was awarded custody of the children. Neither father has supported the

children. The evidence shows that the burden of care and support was given to and assumed by the defendant grandmother, Carmen. The plaintiff, after bringing Nancy home to Carmen, lived there part or most of the time, and just what she did, how much she worked, or what she contributed to the expenses of the family home cannot be acertained from the record. It appears that she worked as a waitress in Scottsbluff, that she came back and forth to the family home in Mitchell, and that she went with a number of different men. She married her present husband, Carl Cochrane, in July 1954, "about a week or two before their first boy was born." They now have three children, an 8-year old, a 3-year old, and one 15 months, at the time of the trial. After their marriage they lived in a motel for a while, their rent was not paid, and they moved back into a shack in the front part of the lot where the defendant has her home. Later on, they were in Oklahoma for a period of about 4 months. They later moved to a basement house just west of Joe Blanco's house. The house of Joe Blanco, older son of Carmen, is immediately west of the defendant's house. The plaintiff and her husband have lived in this basement house with their three children continuously until the time of the trial. All during this period of time, Carmen has had Carmello and Nancy with her in her home. Carmello and Nancy have not lived with the Cochranes at any time. During this period, Carl Cochrane has had no steady job and has worked for many and various employers. He is heavily in debt and has either surrendered or had repossessed from him an automobile and two trailers. He owes for medical bills, owes to loan companies, and has other debts. The Cochranes have lived on unemployment compensation during the last two winters. It appears that this compensation amounts to about $34 per week, and a clear inference can be drawn from the record that Carl does not get a job and go to work until he has exhausted his unemployment compensation. He plans to leave the

community as soon as he can. The basement house is unfinished, has concrete floor and walls, has no sewage or toilet facilities, and is heated by oil furnished from an improvised barrel arrangement shown in one of the exhibits. The basement house does have running water. He is about to lose it for failure to make the payments on it.

The evidence shows that Carmen, the defendant grandmother, has had the children in her home all during this period of time. She has clothed and fed them, sent them to school and church, and has provided and cared for them as a dedicated and loving mother. The children are healthy and well-behaved. A school official testified as to their good behavior and conduct in this respect. All of this was done, as we see it from the evidence, with the knowledge and consent, and by the procurement, of Shirley, the mother. At no time, until within the last year before the filing of this case, did she demand or try to take these two children in her own home. Carmen supported the children by working in the fields and by the contributions of $20 to $25 weekly from her son, Joe, who lives next door. The evidence shows that Joe has a fine home, that he has steady work with a good income, and that he has been the responsible head of the whole family, helping them all out, since his father's death about 7 or 8 years ago.

Perhaps the most persuasive testimony in the record as to the best interests of these children is their own. They have lived with their grandmother, and she has cared for them and loved them. They regard her as their mother, and they do not love their mother and do not want to live with her and with Carl Cochrane. The identification of Carmen as their mother is so deep that the boy referred to Carmen in his testimony as his mother and had to be reminded that she was his grandmother. At the time of the trial, Carmello was almost 15 years of age and Nancy was almost 11 years of age.

The evidence shows that Carmen's care and custody

of these two children met with the acquiescence, consent, and cooperation on the part of the plaintiff until the last year before the trial. About February 1963, plaintiff discovered that Carmen was receiving welfare assistance in the sum of $115 per month for the care of the children. This knowledge ignited the trouble between the parties and eventually led to this litigation.

Further recital of the voluminous evidence in this case is unnecessary. We deem the following from Williams v. Williams, 161 Neb. 686, 74 N. W. 2d 543, cited in Raymond v. Cotner, *supra*, as applicable: "They have been parents to the child for all intents and purposes. A court may well hesitate to take the child away from such surroundings to try an experiment elsewhere. * * * The indifference of the father for the child's welfare for almost 8 years and his willingness that others should assume the obligations of parents in his stead, with the development of the ties and affections that naturally flow therefrom, leads us to the conclusion that the father has forfeited his natural right as a parent to uproot and destroy the close relationship between the child and the grandparents which he permitted to come into existence with his full approval and consent."

The wishes of these two children, whose testimony is clear, intelligent, and sincere, must also be taken into consideration. In Stohlmann v. Stohlmann, 168 Neb. 401, 96 N. W. 2d 40, we said on this point: "It appears that one more thing ought to be considered in determining what should be done in this case. It is the will and wish of these children that the interveners shall have full custody of them. This desire is quite normal and natural since from what has been said it is clear that the interveners have actually stood in loco parentis to them in a satisfatcory (satisfactory) environment since they were babies." See, also, State ex rel. Bize v. Young, 121 Neb. 619, 237 N. W. 677.

Under the evidence in this case and the controlling authorities, we hold that the plaintiff mother has for-

feited her preferential right to the custody of these two children, that considering all of the circumstances she is not a fit and proper custodian for these two children, and that both the desires and the best interests of the children command that these children stay with the only person who has ever been a real mother to them, the defendant, Carmen Blanco.

For the reasons given above, the judgment of the district court is reversed and the cause remanded with directions to dismiss the plaintiff's petition and enter a judgment awarding the custody of Carmello and Nancy to the defendant, Carmen Blanco.

REVERSED AND REMANDED WITH DIRECTIONS.