In re Application of William R. Gray, for a Writ of Habeas Corpus.
William R. Gray, appellant, v. Nadine Mae Hartman et al., appellees.
150 N. W. 2d 120
Filed April 14, 1967. No. 36331.

Frost, Meyers & Farnham and Frederick J. Stoker, for appellant.

White, Lipp, Simon & Powers, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and HASTINGS, District Judge.

HASTINGS, District Judge.

This is a suit in habeas corpus brought by William R. Gray, the father of Susan Marie Gray, against Nadine Mae Hartman, the half sister of the child, to obtain custody of the child. The trial court entered an order dismissing and denying the writ, and remanding custody and possession of the minor child to the half sister, and the father has appealed.

The evidence shows that plaintiff and Mae Hartman were married on August 24, 1948. On August 21, 1950, the child, Susan Marie Gray, was born to this union. In November of 1950, William R. Gray filed a petition for divorce on which a decree of divorce from William R. Gray was granted on March 12, 1951, to Mae Hartman Gray on her cross-petition. The decree awarded custody of the minor child to Mae Hartman, with visitation rights granted to the father, who was ordered to pay child support of $50 per month.

At the time of the marriage, Mae Hartman Gray continued to live at the home of her parents at 3021 Read Street, Omaha, Nebraska, where she remained with

Susan and two daughters by a previous marriage, Judy and Nadine, the defendant herein, until Mae's death on March 19, 1965. On March 30, 1965, Nadine made application to modify the original divorce decree to place the minor child's custody in her. On April 5, 1965, plaintiff filed his petition for a writ of habeas corpus, the denial of which by the trial court, on the 25th day of February 1966, is the subject of this appeal.

It is obvious from an examination of the record, that plaintiff's only standing to make his claim is the fact that he is the child's natural father and sole surviving parent. Although Mae Hartman admittedly always resided at 3021 Read Street, plaintiff never claimed that as his residence, stated that he would stay there but 1 or 2 days a month, and that at sometime 9 months or more prior to the filing of the divorce petition, he separated from his wife and moved in with his parents. This would place the date of separation 6 months or more before the minor child was born.

Plaintiff testified that for about the first 5 years of Susan's life, he attempted to exercise his visitation rights, but after being rebuffed on several occasions, "I got tired of the whole thing * * * I just got sick of the whole thing," and for the next 10 years or so, never saw the child, or sent her birthday or Christmas cards or gifts, or inquired as to her well-being. This seems incredible in view of the fact that plaintiff, on August 16, 1952, married the present Mrs. Gray, and lived in her father's house at 7161 North Thirtieth Street, approximately one block east and a block and a half north of Mae Hartman's house, until July of 1964. It is of interest to note that plaintiff had been previously married to a Betty Finch in 1937, to whom a son, Clifford, was born in "about 1940," and whose care and custody was with plaintiff's parents from then on through his marriage to Mae Hartman, and his present marriage. In response to a question as to whether plaintiff ever discussed with his parents that he should take on the responsi-

bility of rearing Clifford, he replied that: "We discussed it but he was in such good hands I felt best just to continue on."

The defendant is a half sister of Susans, being one of the two children born to Mae Hartman by a previous marriage which ended in the death of the children's father in about 1942. At the time this hearing commenced in April of 1965, she was 25 years old. She was working as a teller at the Omaha National Bank, earning $340 per month, and had been so employed for 7 years. With the exception of the utilities which her grandmother paid out of a small railroad pension, and the $50 monthly child support, Nadine had been the sole support of the family during the last several years.

Since September 16, 1964, Nadine had been engaged to Airman 2nd Class Richard Schwierking, whom she met the previous January, and married in the summer of 1965. Mr. Schwierking has been closely in touch with the family situation during the course of Mae's terminal illness, has developed a close bond with Susan, and he and Nadine have discussed and made what appear to be well-considered plans for Susan's welfare.

Although the minor child gave no formal sworn testimony, she was interviewed in chambers by the trial judge and the attorneys for both parties in each other's presence, and expressed a desire to remain in the custody of the defendant, and a definite wish not to go with the plaintiff.

On January 24, 1966, further proceedings were had which involved a conference among the parties, their attorneys, Mrs. Maxwell from the county welfare office, and the trial judge, and again on February 4, 1966, a conference was held by the trial judge with the minor child and Mrs. Maxwell. Although there was no agreement by the attorneys for plaintiff that this latter conference be held, the court's intent to have the same was announced in advance, and no objection appears of record. It is this latter conference particularly that

plaintiff attacks as erroneous because it permitted the court to take into account improper investigations conducted by the court and not submitted to either litigant or included in the record.

However, the result of this "extra judicial" hearing served only to amplify the minor child's previously stated desire to remain with the defendant, and her opposition to going with the plaintiff, after trial attempts in that direction, and confirmed the anticipation of a fit and proper atmosphere and intelligent arrangement in the defendant's home. What confirms an opinion already reached as the result of competent evidence cannot be said to have induced it. As stated in Omaha Paxton Hotel Co. v. Board of Equalization, 167 Neb. 231, 92 N. W. 2d 537: "In a case tried to the court, either in law or in equity, the presumption obtains that the trial court in arriving at decision, considered only such evidence as was competent and relevant, and this court will not reverse a case so tried because other evidense was admitted, if there is sufficient competent and relevant evidence in the record to sustain the judgment."

The record affirmatively stresses the fitness of defendant to have custody of the minor child. Since early 1964, during the illness of the child's mother, past her death in March of 1965, defendant has had Susan's care and custody. The fact that Susan appears to be bright, healthy, happy, and well adjusted indicates that her best welfare lies in a continuation of that custody. "After the court's jurisdiction has been invoked by habeas corpus petition seeking custody of a child, the child is a ward of the court and its welfare lies in the hands of the court." State ex rel. Cochrane v. Blanco, 177 Neb. 149, 128 N. W. 2d 615. This is further amplified by Susan's very strong wishes to remain with her half sister. "This court said in State ex rel. Bize v. Young, 121 Neb. 619, 237 N. W. 677: 'While the wishes of a child under the age of fourteen years are not controlling where in conflict with what the courts regard as the

minor's best interest, still "Even though an infant is under the age of fourteen, if he has reached an age sufficient to form an intelligent preference, it is proper that his wishes should be consulted in connection with the selection of a guardian." 28 C. J. 1077.' In the present case Carolyn, Sue and Danny were respectively 14 and 15 years of age at the time of trial. It is true that the foregoing statement was made in a guardianship matter but the question involved was fitness to be custodian of children." Stohlmann v. Stohlmann, 168 Neb. 401, 96 N. W. 2d 40.

Plaintiff cites the case of Raymond v. Cotner, 175 Neb. 158, 120 N. W. 2d 892, wherein this court, by a four to three decision, held: "Where the custody of a minor child is involved in a habeas corpus action the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent. * * * The courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right."

There is no question of moral unfitness on the part of the plaintiff. He has made his support payments, as ordered by the court, although in 1952 he made application to have them cut in two because of an alleged change in financial circumstances and deprivation of visitation rights, and has informed the court that he does not intend to continue support of the child if not granted her custody. Therefore, he has not been guilty of abandonment in the classic sense. However, proper concern for the welfare of a child encompasses something more than dutiful adherence to a court's order as to financial support. It includes love and friendship; presence and care; and concern and interest, all of which have been withhold by the plaintiff. As stated in Goodman v. Goodman, 180 Neb. 83, 141 N. W. 2d 445, "Children are not chattels," and to entitle one to parental

rights he must show something more than mere indicia of title. Plaintiff contends that he had the welfare of the child at heart when over a decade ago, he discontinued all efforts at visitation so as not to upset her, and deprived her of his parental concern during her formative years. He appears now as an absolute stranger to her, and under the guise of concern for her welfare, has no hesitation in seeking to uproot her at an age when she is approaching the threshold of adulthood. An effective abandonment or forfeiture of parental rights may be effected by the indifference of a parent for a child's welfare over a long period of time. State ex rel. Cochrane v. Blanco, 177 Neb. 149, 128 N. W. 2d 615. The plaintiff here has defaulted in his responsibilities, and has forfeited what rights he had. When this has occurred, a consideration of the child's best interests are paramount. Williams v. Williams, 161 Neb. 686, 74 N. W. 2d 543.

We conclude, for the reasons hereinbefore set forth, that the judgment of the trial court should be and is hereby affirmed.

AFFIRMED.