IN RE GUARDIANSHIP OF EBBA PETERSON.
JOHN A. LINDBLAD, APPELLEE, V. JACOB PETERSON,
APPELLANT.

FILED MARCH 28, 1930. NO. 27121.

*John J. Ledwith* and *Cordeal, Colfer & Russell*, for appellant.

*Latham & Schroeder, contra.*

HEARD before GOSS, C. J., ROSE, DEAN, GOOD and DAY, JJ., and CARTER and CHASE, District Judges.

DAY, J.

This is an appeal from the judgment of the district court for Frontier county approving and confirming an order of the county court of said county appointing John A. Lindblad guardian of the estate of Ebba Peterson, a minor.

John A. Lindblad filed a petition, July 13, 1928, in the county court of Frontier county praying for his appointment as guardian of the person and estate of Ebba Peterson, his stepdaughter, a minor, aged 15 years. His petition alleged that both he and the minor were residents and inhabitants of said county; that he had married Hanna Peterson, the mother of Ebba, in April, 1926, from which date until the death of the mother, July 5, 1928, she and her minor child Ebba had resided with him in his home in Frontier county; that his wife, the mother of the minor child herein involved, died intestate leaving an estate of which her minor child inherited three-fourths; that the residence of Jacob Peterson, the father of said minor child, is in Lancaster county, Nebraska, but that the father is not a suitable and competent person to be appointed the guardian of the person and the estate of the minor child.

Ebba Peterson, the minor involved herein, filed a duly acknowledged written nomination of Lindblad, her stepfather, and requested his appointment as her guardian.

To all of which the father objected, as follows.: "That your objector, Jacob Peterson, is now, and for many years last past has been, a resident of Lancaster county, Nebraska, and that he is the father of said Ebba Peterson, and further that the domicile of the said Ebba Peterson, since the date of the death of her mother, is Lancaster county, Nebraska, and that because of this fact the county court of Frontier county, Nebraska, is without jurisdiction to hear this application or to appoint a guardian for the said Ebba Peterson, a minor."

Upon hearing, the county court overruled the objection to the jurisdiction, made a finding that the minor was a resident and inhabitant of Frontier county, and entered an order appointing appellee as her guardian. Thereafter, the district court, upon appeal, after a hearing upon the same issues, approved and confirmed the order of the county court by a decree as follows:

"Now on this 25th day of May, 1929, the court being duly advised in the premises, finds that the minor child, Ebba Peterson, has been a *bona fide* resident of Frontier county for more than two years, having been removed to that county by her mother, in whose custody she was, about the month of April, 1926, and resided with her mother in that county until the death of her mother in the month of July, 1928, and has since resided in said county; that she is the owner of an interest in real and personal estate; that she has nominated John A. Lindblad, as guardian; that it appears to the court from the evidence that John A. Lindblad is a suitable and competent person to have the guardianship of the person and estate of said minor. It further appears from the record that the only question raised by the objections of Jacob Peterson is a question of jurisdiction. The court finds that the county court of Frontier county had jurisdiction over said minor and of these proceedings. No other or further objection being made by said Jacob Peterson, it is therefore ordered by the court that the proceedings of the county judge of Frontier county, Nebraska, be and they are hereby confirmed and approved."

The sole question of law presented in this court, as in the county and district courts, is whether the Frontier county court had jurisdiction to appoint a guardian of the person and the estate of Ebba Peterson, a minor, 15 years of age. In 1918, Jacob and Hanna Peterson, the parents of Ebba, were divorced in the district court for Lancaster county, where both resided at that time. The decree of divorce provided for the custody of Ebba as follows: "That the education, care, custody and nurture of the minor daughter Ebba is hereby awarded to the plaintiff subject to the right of the defendant to visit said child at all proper times, and subject to the further right of the father to take said child to his own home to visit him and his other children at suitable times and in such manner as shall not interfere with the education and control of said child; and it is further ordered that said child shall be and remain at all times within the jurisdiction of this court."

In April, 1926, Ebba's mother married John A. Lindblad, appellee, and, accompanied by her child Ebba, moved to her husband's home in Frontier county, where on July 5, 1928, she died, intestate, leaving surviving as her sole heirs, appellee, her husband, and Ebba, her minor daughter. Ebba lived with her mother and step-father continuously from June, 1926, until the mother's death, and since that time has remained at her step-father's home in Frontier county. Ebba's father, Jacob Peterson, was a resident of Lancaster county, Nebraska, at the time of the divorce in 1918; at the time of the death of her mother; at the time Lindblad filed his petition in the county court of Frontier county praying for his appointment as Ebba's guardian; and now is a resident of Lancaster county.

The guardianship proceedings in this case were apparently prosecuted under section 1577, Comp. St. 1922, which provides: "The county court in each county, when it shall appear necessary or convenient, may appoint guardians to minors and others, being inhabitants or residents in the same county." The appellant, the father of Ebba Peterson, contends that the county court of Frontier county did not

have jurisdiction to appoint a guardian, for that the domicile of the minor, Elba Peterson, was in Lancaster county, Nebraska, at the time of the divorcement of her parents in 1918. There, also, she was a resident and inhabitant. What effect did the decree of divorce have upon her? In said decree, her custody was given to her mother. As shown by the decree quoted, *supra*, the custody of the mother was a restricted one. It was restricted by, and subject to, the right of the father to visit said child at all proper times; by the right of the father to take the child to visit him and his other children at suitable times. In order that the father might have the benefit of the privileges reserved to him, it was also ordered that the child should be and remain at all times within the jurisdiction of the court. There was no finding in that decree that the father was unfit to have the custody, care, and education of his child. In this state of the record, the decree of divorce merely settled the question of the custody and control of said child as between the father and mother and upon the death of the mother the father became entitled to her custody and control.

This court said in the case of *Clarke v. Lyon*, 82 Neb. 625: "Where a court granting a divorce, without finding the father unfit, temporarily awards the custody of minor children to the mother, such decree does not deprive the father of the natural right to the custody of such children against any person except the mother; and, upon her death, such right ceases to be affected by such award." In explanation thereof the court used the following language: "Her death not only removes the reason for this award of custody, but renders its execution impossible, so that the right of the father to the custody of the children is no longer affected by such decree." Applied to the case at bar, upon the death of Mrs. Lindblad, the father's right to the custody of Ebba Peterson was not affected by the decree of divorce. Upon that occasion the father immediately became entitled to her custody as a natural right, unaffected by the former decree. The step-father and appellee, Lindblad, did not in any sense succeed to the rights or duties

relative to the minor child, which the mother acquired by virtue of said decree against the father. The father, as the surviving parent, has the natural right to the custody of the child. This is fundamental as well as statutory. Comp. St. 1922, sec. 1581. The welfare of the child is paramount, but every presumption is in favor of the competency and suitability of the parents. There is no conflict between the welfare of the child and the right of the parent, but the custody of a minor is to be determined from the facts in each case with a due regard to both. Courts should not, and do not, deprive parents of the custody of their child without good cause. In a contest between a stranger and a parent, the latter is not to be deprived of the custody of the child, unless unfitness is affirmatively alleged and proved. This court has so held in *Norval v. Zinsmaster*, 57 Neb. 158; *Terry v. Johnson*, 73 Neb. 653; *Voboril v. Voboril*, 115 Neb. 615; *Bailey v. Randall*, 16 Neb. 328.

Since the county court of each county has jurisdiction to appoint a guardian to a minor who is an inhabitant or resident in the same county, the gist of this whole case is whether Ebba Peterson was a resident or inhabitant of Frontier county, as contemplated by section 1577, Comp. St. 1922. If she was, the court had jurisdiction, to make appointment complained of herein; if she was neither a resident nor an inhabitant of said county, then the court was without jurisdiction.

The question of residence, within the meaning of the statute, is generally one of intention to be determined from the facts and circumstances of each particular case. The test of residence is: Did one remove from his former residence with an intention to abandon the same, and an intention of acquiring a new residence? Did Ebba Peterson acquire a new residence when she was taken by her mother from Lancaster to Frontier county? It is the general rule that the residence of a minor child is that of its parents. Under section 1581, Comp. St. 1922, the parents are equally entitled to the custody, services, and earnings, and to direct her education. But upon the entry of a divorce de-

cree between the parents, obviously both cannot exercise all the prerogatives belonging to them as parents, and then the court must make some equitable order, having in mind the best interest and welfare of the child. The order made relative thereto is a temporary order (Comp. St. 1922, sec. 1527), and the child and parents in so far as the custody of the minor child is concerned, are subject to the future orders of the district court relative thereto. We are not passing upon the question as to whether or not the divorced mother of a child, having the unrestricted custody, could, by changing her residence, change that of the child. That is not the case here, since the custody of the mother was restricted by the decree of divorce requiring the child to be kept within the jurisdiction of the court and making the custody of said child as between the parents subject to further orders of the court relative thereto. It follows, therefore, that, since the minor was not capable of changing her residence and the mother was deprived the right by the restrictions in the very decree which gave her custody, the residence of Ebba Peterson was not changed from Lancaster county to Frontier county. It then becomes apparent that the jurisdiction of the Frontier county court fails unless Ebba Peterson was an inhabitant of said county. Before her mother's death, the matter of her habitation and residence was a matter within the exclusive jurisdiction of the district court for Lancaster county. The rights and duties of the mother and father were determined by the decree. They were matters subject to further orders of that court. But when the mother, Hanna Peterson Lindblad, died, the decree of divorce between the parties, in so far as it regulated the rights of the custody of the minor child, became a nullity. Immediately thereupon the father became entitled to the custody of his child. By operation of law, her residence and habitation became that of her father. It became his duty as well as his privilege to select a home for her. From the death of the mother on the 5th of July, 1928, the father was entitled to her custody and control, and from said date he was entitled to choose

her place of residence and habitation, by operation of law. He immediately undertook to exercise his parental right, but was thwarted, and the said right was contested by the step-father, by the commencement of this proceeding on July 13, 1928. The court was without jurisdiction in this case, first, because the mother was without authority to change the residence or habitation of the minor, since her custody was restricted by the provisions in the divorce decree relative to visitation of the father and requiring said minor to be kept within the jurisdiction of the court; and secondly, because, on and after the death of the mother the father of said minor had the exclusive right to determine the place of residence and habitation of said minor child, and by affirmative act he has fixed it in Lancaster county.

While the appellee has not assisted us with briefs, we are not unmindful of certain school cases decided by this court wherein these questions are discussed. *Wirsig v. Scott,* 79 Neb. 322; *Mizner v. School District,* 2 Neb. (Unof.) 238; *McNish v. State,* 74 Neb. 261. In each of these cases, the child was living apart from the parents with their consent. The interest of the state in the education of the children was the controlling factor in these cases. Not one of them involved the question of depriving a parent of the custody of his child. In fact, this court in the case of *Wirsig v. Scott, supra,* distinguished them in the following language: "This contention is put upon the ground that the parents are the natural guardians, and that, while living, a guardian cannot be appointed unless the unsuitableness of the parents is adjudicated, and numerous authorities are cited in support of that contention. That rule is applicable where the appointment of a guardian is resisted by the parents, but we know of no rule of law which will prevent the parents from voluntarily surrendering the custody and control of their children to a suitable guardian, if they choose to do so." Under the holdings of this court, we have no doubt but that her residence in Frontier county was sufficient, if with the father's consent, to entitle her to attend the public schools there.

However, we conclude that the Frontier county court did not have jurisdiction to appoint a guardian over the minor in this case, when the jurisdiction of the court was challenged by the father, who was entitled to her custody some time prior to the commencement of these proceedings. In conformance to the foregoing opinion, the objections of the appellant are sustained, the order appointing the appellee guardian of Ebba Peterson is vacated, the judgment of the district court is reversed and the cause remanded to the district court, with directions to certify the same to the county court.

REVERSED.