IN RE DEPENDENCY OF PAMELA RAE GROSS AND PATRICIA SUE GROSS, MINORS.
STATE OF NEBRASKA ET AL., APPELLEES, V. RICHARD H. GROSS ET AL., APPELLANTS.
114 N. W. 2d 16

Filed March 23, 1962. No. 35132.

*William G. Whitford,* for appellants.

*Clarence A. H. Meyer,* Attorney General, *Melvin K. Kammerlohr,* and *William W. Griffin,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an action brought under the juvenile laws of this state in the district court for Holt County, Nebraska, to have Pamela Rae Gross and Patricia Sue Gross,

minors, declared to be dependent and neglected children. They are twins and hereafter will be referred to as such.

The petition filed by the county attorney of Holt County, on May 22, 1961, first alleges that these twins were and had been in the care, custody, and control of Eugene and Mary Zimmerman, husband and wife, residing at Ewing, Nebraska, where they were placed by their father on December 5, 1960. It then alleges that they are dependent and neglected children in that they have no proper parental care or guidance. It states they were abandoned and relinquished by their natural parents, who have failed and neglected to furnish or provide a suitable home, care, supervision, and maintenance for said children. It closes by alleging both of the natural parents are unfit to have the care, custody, and control of said children.

At the trial Richard H. Gross and Dorothy Gross, husband and wife, and parents of the two minor children, appeared and resisted the petition. They were designated as protestants and at times will be so designated herein.

The court's decision was announced immediately at the close of the evidence. It found that the twins were neglected children in much the same language as the petition; that since December 5, 1960, they resided in Holt County, Nebraska, in the care, custody, and control of the Zimmermans; and that they had been placed there by their father on that date. It then entered judgment making them wards of the court and taking them from the parents and placing them again in the care, custody, and control of the Zimmermans.

The protestants' motion for a new trial having been overruled they have appealed to this court.

Protestants make 16 assignments of error but in view of our discussion the only ones to be discussed in this opinion are that the findings and judgment of the trial court are contrary to the law and the evidence.

We sustain these assignments.

An appeal from a finding and adjudication of the district court by authority of section 43-202, R. R. S. 1943, that a child is neglected or dependent is disposed of in this court by trial de novo upon the record. Krell v. Sanders, 168 Neb. 458, 96 N. W. 2d 218; State v. Best, *ante* p. 483, 113 N. W. 2d 650. It is therefore necessary to discuss the evidence as disclosed by the record.

The twins were born June 8, 1959, and their parents are the protestants Richard H. Gross and Dorothy Gross. Richard was 17 and Dorothy was 16 years of age when they were married. They have five children whose names and ages at the time of trial were Douglas, age 9, Richard, age 6, Letha, age 3, and the twins in this litigation, age 2. The protestants lived most of their married life at either Norfolk, Nebraska, or Yankton, South Dakota. Their married life had not always been harmonious. They had separated three times and Dorothy had twice sued for divorce but each time there was a reconciliation. Nothing was shown in regard to the first two separations. Prior to and at the birth of the twins, Dorothy was in very poor health necessitating extended treatment in the hospital. Her sickness continued thereafter and she was subjected to a serious operation which, according to her testimony, occurred 9 months later. She had trouble with her husband after the twins were born and while they were living at Norfolk. Dorothy's mother said her sickness had much to do with this last separation. Following a nervous breakdown Dorothy took the five children and went back to Yankton where they had previously lived, but the three eldest were thereafter brought back to their father. She worked in the state hospital there as she did before her marriage. While in Yankton, Dorothy brought the second divorce action.

In December 1960, Dorothy Gross became ill and telephoned, saying she could not take care of the twins. Richard went to Yankton and brought them back to

Norfolk. He took them to his parents' home. They were there only a day. Arlene Meinke, a sister of Richard, had the older girl and Richard's mother had the two boys and neither could or would take care of more. The sister decided the twins simply had to go somewhere and had learned that the Zimmermans wanted children. She recommended to the brother that they were good people and would make a fine home for the twins. Richard telephoned the Zimmermans. They came and, after discussion that day, took the twins from Norfolk. The grandmother, sister and her husband, and Richard were all present. The grandmother and sister reiterated they would not keep the twins and something must be done that day. There is some dispute as to what was said between the father and the Zimmermans. The father contends he told them they could adopt the twins if the protestants were divorced. Mary Zimmerman says he agreed to the adoption without question. In any event it is not disputed that Dorothy Gross never gave her consent to adoption and was never then consulted about the matter by anyone.

Richard and Dorothy Gross became reconciled shortly thereafter. In February or early March of 1961, they established a home at Madison, Nebraska. Richard is employed there in a filling station and has worked regularly since the fall of 1960. His regular weekly wage is $65, and he receives some overtime in addition. Their three older children are with them. The evidence is wholly uncontradicted concerning the present home. Since their reconciliation there seems to be no discord in the home and the parents and children seem fond of one another. The home is clean, and the three children with them are properly dressed. They regularly attend school and Sunday school. The childrens' school work seems satisfactory. The surroundings are in all respects decent and proper. The authorities in Madison County have in no way complained of their home. Neither is any immoral conduct shown on behalf of the parents.

Meanwhile the twins have been with the Zimmermans in Ewing, Nebraska, and the evidence shows they have been in all respects adequately and properly cared for. The protestants do not dispute it. The witnesses for the State emphasize it. The trial court believed it or it would not have again placed the twins with the Zimmermans, and this court accepts that view.

After the protestants had established their home at Madison, they went to the Zimmerman home and despite some difference in the testimony, the preponderance of the evidence clearly establishes that their purpose was to get the twins. Richard Gross made three trips. On the first trip he found the Zimmermans were not at home. The second time, in April, both protestants with the grandmother were at the Zimmerman home, and the father and mother were there twice thereafter. The Grosses testified they wanted the children and that Dorothy was in tears and begged for them. Mary Zimmerman contends that Dorothy Gross never said, "Give me my children today." On at least one occasion and perhaps two occasions the Zimmermans refused to let them see the children. On the last call the Zimmermans advised them to see their lawyer.

Dorothy Gross, on January 31, 1961, had already seen Daniel Jewell, the attorney for the Zimmermans. He endeavored to have her sign a consent for his clients to adopt the twins, but she refused so to do. On March 9, 1961, the attorney informed his clients of the refusal. He suggested the Zimmermans consult the county attorney of Holt County whom he advised by telephone of their coming. Jewell in turn discussed the matter with the county attorney and was present at the trial.

The trial court held that the twins were neglected children within the purview of section 43-201, R. R. S. 1943. Its findings were restricted in their reference to the parents only and in no way made reference to what was being done for the twins by the Zimmermans who had them in custody. It appears plainly that at that

time they were carefully nurtured, cared for, and loved by them. Neither had their parents abandoned them at the time the petition was filed but rather they were trying to regain their custody. Without contradiction the twins were returned to Richard by Dorothy Gross because of her illness which rendered her utterly unable to care for them. Richard was then estranged from his wife. The twins were infants of tender age. His sister and mother advised him in the presence of the Zimmermans that they couldn't and wouldn't care for the twins and something had to be done immediately. He appears to have been working and his earnings seem badly needed. Mary Zimmerman said the Grosses were desperate. The same day he allowed the Zimmermans to take the twins in custody.

In Norval v. Zinsmaster, 57 Neb. 158, 77 N. W. 373, 73 Am. S. R. 500, this court said: "The right of a parent to the custody of a child is not lost beyond recall by an act of relinquishment performed under circumstances of temporary caprice or discouragement."

Even if the conversation between Richard and the Zimmermans could be construed as a consent for the adoption, it cannot affect the rights of the wife Dorothy Gross. She was never consulted, or consented to their adoption. She was ill when they were taken and declined to consent to adoption in January 1961. She and Richard shortly thereafter tried to regain their custody.

In Ripley v. Godden, 158 Neb. 246, 63 N. W. 2d 151, this court held: "A parent may not be deprived of the custody of his child by the court until it is established that the parent is unfit to perform the duties of the relationship of parent and child or has forfeited the right to the custody of the child."

To the same effect, in Lung v. Frandsen, 155 Neb. 255, 51 N. W. 2d 623, it was said: "After Mrs. Lung returned from the hospital her condition improved and the general condition of the home improved. This is also true of the house they now occupy in Kansas which

is a 7-room home with both water and electricity available. * * *  There is nothing in the record that disqualifies either of them from having and raising their own children, except the fact that they are in a low income bracket and consequently have not always had available all the facilities we commonly associate with a modern home."

The trial court's finding with respect to lack of parental care is couched in both past and present tense. So far as the present is concerned they were not in the care of the parents and it is conceded by all that they were having the best of care.  Also the Gross home at Madison is a proper home and the children remaining with them are properly cared for.

It is quite apparent that the State adopted the theory that the present condition of the home of the twins' parents was immaterial.  On the trial the county attorney stated that though the home of the parents was kept clean and the children well fed and not neglected when the trial occurred, it would make little difference because the proper inquiry was what the condition was prior to the Zimmermans' taking them.  It is quite clear the court also adopted this theory.  There is no satisfactory evidence that the Grosses had previously failed or neglected to provide proper subsistence, or the necessary care for their health.  The Zimmermans' physician testified that one of the twins had scars on her buttocks and the other one had a scar on her foot.  They were healed, however, when he saw them, though one not completely.  The report given to him by the doctor from Yankton indicated that they had been hospitalized on four occasions for either streptococcal tonsilitis, respiratory infection, or diarrhea.  There is no showing that it was caused by neglect.  They were then under the care of a physician.  Considering the serious illness of the mother there is little wonder that the twins were not well.  Parents may not be deprived of their children because of sickness under such circumstances without

a showing that it was caused by neglect.

The State in its brief asserts that the parents made no attempt to furnish support for the twins while at Ewing. No evidence is introduced in this regard but it is quite evident from the record that not only was none asked, but that none was wanted. The Zimmermans did not want the parents to have any responsibility toward the children. They wanted to have the exclusive care, custody, and parental responsibility over them by adoption. They were not willing for the parents to see the children.

This is not the case usually considered in juvenile court. The twins did not want for anything by way of subsistence, care, nurture, or love. It is plainly an attempt to use the juvenile courts to determine the rights to their custody between two families. The Zimmermans' counsel telephoned to the county attorney and conferred with him, and sent his clients to him for that purpose. We are not cited to cases in this jurisdiction where the juvenile courts were so employed. The problem has however presented itself in other jurisdictions.

In Orr v. State, 70 Ind. App. 242, 123 N. E. 470, the court, in a similar contest between a mother and grandparents who had the actual custody of the child, stated that a child is not a "dependent child," within the meaning of Burns' Ann. St. 1914, section 1642, although both parents have left her, where a grandparent has always sheltered, clothed, and nourished her, and desired to do so in the future.

In a similar situation the Supreme Court of Colorado in Carrera v. Kelley, 131 Colo. 421, 283 P. 2d 162, said that jurisdiction in a dependency proceeding attaches only where proceedings are brought, not in behalf of any person, but only where children are found delinquent or to have been so circumstanced, neglected or imposed upon as to require state to take over their custody or to act otherwise for their protection.

In Hull v. Hull (Tex. Civ. App.), 332 S. W. 2d 758,

the following rules were laid down in such cases: "A child must in fact be dependent and neglected at time proceedings are instituted to have it declared a neglected and dependent child, or it should be in danger of so becoming in the near future. Vernon's Ann. Civ. St. arts. 46a, § 6, 2332."

A child may not be declared dependent and neglected for the sole purpose of facilitating adoption proceedings, or to better the position of anyone in a dispute over custody of the child. Legislation authorizing proceedings to declare a child neglected and dependent is applicable only to emergency situations where the child's needs must be met. To the same effect, see In re Masters, 165 Ohio St. 503, 137 N. E. 2d 752, the Ohio statute being much like our own. See, also, Fritts v. Krugh, 354 Mich. 97, 92 N. W. 2d 604.

It is apparent that the twins in this action were not neglected children within the purview of the juvenile statute cited herein. And that statute could not be used to determine their custody between their parents and the Zimmermans in such a proceeding.

It follows that the judgment of the trial court must be reversed and the cause remanded with directions to dismiss the petition.

REVERSED AND DISMISSED.

SIMMONS, C. J., participating on briefs.