FRANKLYN H. RAYMOND, APPELLEE, v. ALBERT A. COTNER ET AL., APPELLANTS.

120 N. W. 2d 892

Filed April 5, 1963. No. 35362.

Francis M. Casey, Thomas Conis, and Guy C. Chambers, for appellants.

Richard J. Spethman and Gross, Welch, Vinardi, Kauffman, Schatz & MacKenzie, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is a suit in habeas corpus brought by Franklyn H. Raymond, the father of Lin Dee Raymond, against Albert A. Cotner and Edna L. Cotner, the maternal grandparents of the child, to obtain the custody of the child. The trial court awarded the custody of Lin Dee Raymond to her father and the grandparents have appealed.

The evidence shows that plaintiff and Charlotte Cotner were married on October 23, 1945. On December 5, 1950, a child, Lin Dee Raymond, was born to this union. On March 12, 1952, a decree of divorce was granted to Charlotte Raymond by the terms of which she was granted the custody of Lin Dee Raymond, then approximately 15 months of age. The right of visitation at reasonable times and places was granted to the father. The decree also awarded child support to the mother in the amount of $40 per month, payable $10 per week.

At the time of the separation of the parties, which occurred shortly after the birth of the child, they resided in Pacific Junction, Iowa. After separating from the plaintiff, Charlotte Raymond returned to the home of her parents near Plattsmouth, Nebraska, where she and the child resided until Charlotte's death on November 11, 1961. Immediately following the death of Charlotte Raymond plaintiff demanded the custody of Lin Dee Raymond, which was refused by the defendants. On March 23, 1962, this habeas corpus action was filed.

The evidence shows that plaintiff is 37 years of age. He was born in Pacific Junction, Iowa, and has lived there most of his life. He was graduated from high school, which is the extent of his formal education. He is presently employed as a stationary engineer by a

contracting firm engaged in the construction of missile bases at a wage of $450 per month. He owns his home in Pacific Junction, which he purchased in 1957 for $3,500, all of which has been paid. The home is a two-story frame house, having 10 rooms, four of which are bedrooms. It is equipped with a furnace and a private water and sewerage system.

On May 22, 1953, plaintiff was married to Marcella Cuhel, who has a 12-year-old daughter by a previous marriage. This daughter of Marcella's was adopted by the plaintiff and lives in the family home. Two children were born of the marriage, Larry age 6 and John age 8 years, who also live in the home. Marcella is 33 years of age and testified that she will care for Lin Dee and give her the same care and affection as the other children. She testified that plaintiff is a good husband and father, who provides well for his family. There is evidence that Marcella is neat and clean and keeps the home in good order. The children in the home are well cared for. They attend school and Sunday School regularly. The home is described by third persons as a good Christian home.

The evidence shows that plaintiff has paid child support for Lin Dee as it became due, as required by the divorce decree. Plaintiff testified that he saw Lin Dee three or four times a year when she was very small. He has not seen her in the last 9 or 10 years because, as he says, his former wife thought it would be best that he not do so. The evidence shows that his parents visited Lin Dee at the home of her maternal grandparents on the average of once a month, and that he was continuously informed by them concerning the welfare of the child.

The defendants, whom we shall refer to as the Cotners, reside on a farm 2 miles west of Plattsmouth, Nebraska. They rent out the farm land and live in the farm home. The farm house is about 50 years old, but is in good condition. It is an eight-room, frame house

which is equipped with lights and an oil burner for heat. There are no water or sewerage facilities in the house. He owns the farm, which is wholly paid for. The evidence indicates that the home is clean and well kept. The home is described by third persons as a good Christian home.

The evidence shows that Mr. Cotner is 69 years of age and is generally in good health for a man of his years. He takes Lin Dee to and from school morning, noon, and evening. He testified to his intention to make a will in favor of Lin Dee. Mrs. Cotner is 67 years of age and in good health except for a controlled diabetic condition. Mr. Cotner testified that plaintiff came to the Cotner home on two occasions in an intoxicated condition shortly after the divorce was granted. This was denied by the plaintiff, who stated that he had never been a drinking man. Mr. Cotner also testified that plaintiff shook Lin Dee excessively for getting candy stain on her snow suit when she was approximately 18 months old. He further stated that when a specialist was needed for Lin Dee at an early age, plaintiff stated that he had no money and would not be responsible for the expense. Plaintiff stated that she was taken to a child specialist in Omaha and that he paid Charlotte the $15 doctor bill the following week. Mrs. Cotner testified to the incident relating to the employment of the child specialist. She stated that Charlotte and Lin Dee lived with them until Charlotte's death. She cared for the child while Charlotte was working, which was most of the time after Lin Dee became 3 years old.

The Cotners testified that they had great affection for the child and that they had the means and desire to raise and educate her. They testified that they had never forbidden the plaintiff to see the child, nor did they ever say anything to prejudice the child against her father. They have the feeling that the plaintiff did not treat the child properly and are convinced that the

best interests of the child require that she remain in their care.

Lin Dee Raymond was 11 years of age at the time of the trial. She was not in good health for 6 months after her birth but is presently in good health. There is some evidence that she became emotionally upset when informed that her father wanted to take her into his home. She attends school regularly and her school reports indicate she is a very good student. She was called as a witness and testified to her affection for the Cotners. She testified to the things provided for her care, comfort, and amusement. She said she had never seen her father until the day of the trial and that he was a complete stranger to her. She further stated that she was very happy with her grandparents, the Cotners, and that she did not want to leave them and go with her father, whom she does not know.

The evidence sustains the following conclusions: Both the plaintiff and the defendants are suitable and fit persons to have the care and custody of Lin Dee Raymond. Both the plaintiff and defendants have suitable homes for caring for her. Both plaintiff and defendants have the means of supporting her. Both plaintiff and defendants live in communities which provide proper school and church facilities. Both plaintiff and defendants desire the custody of the child in order to properly train, educate, and provide the needs and comforts of this motherless 11-year-old girl. The problem confronting this court, as it was in the trial court, is the determination of what is best for Lin Dee Raymond under such circumstances.

The applicable law to a case such as we have before us may be summarized as follows: When the custody of a minor child is involved in a habeas corpus action, the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent. The courts may not properly deprive a parent of the custody of a

minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right. Williams v. Williams, 161 Neb. 686, 74 N. W. 2d 543; Caporale v. Hale, 169 Neb. 751, 100 N. W. 2d 847. The right of parents to the custody of minor children of tender years is not to be lightly set aside and the court may not deprive parents of such custody unless they are shown to be unfit to perform the duties imposed by that relationship, or have forfeited their right. Osterholt v. Osterholt, 173 Neb. 683, 114 N. W. 2d 734; State v. Gross, 173 Neb. 536, 114 N. W. 2d 16. A decree of divorce, which awards the custody of a minor child to the mother and in which there is no finding of unfitness of the father, does not deprive the father of the natural right of custody of his child except as against the mother. In re Guardianship of Peterson, 119 Neb. 511, 229 N. W. 885.

It is true that the rights of a father to the custody of his minor child, upon the death or unfitness of the mother to whom legal custody was granted, may be defeated by his abandonment of the child, his complete indifference to its welfare, or by his own unfitness to have its custody. When the superior right of the father has been forfeited, the natural right of a father to have the custody of his minor child must give way to the best interests of the child, even though it results in placing the custody of the child in more distant relatives or unrelated persons. See, Gorsuch v. Gorsuch, on rehearing, 143 Neb. 578, 11 N. W. 2d 456; Williams v. Williams, *supra.*

The evidence shows that plaintiff and defendants have suitable homes in which to care for this young girl. There is no evidence that the Cotners have failed in any respect in caring for her. They are suitable and fit persons to have her care and custody. The plaintiff is likewise a suitable and fit person to have the care and custody of his 11-year-old daughter. The decision must therefore rest on other considerations.

The father has a superior right to the custody of his daughter, unless he has forfeited that right. The issue resolves itself into the question of whether or not he has forfeited his natural right as the girl's father to have her custody. The evidence shows that the father has a good, well-kept home. His wife said she is willing to care for Lin Dee the same as the other children in the home. The step-sister and two half brothers in plaintiff's home would afford companionship ordinarily beneficial to a child of 11 years. The ages of the plaintiff and his present wife are a fact in favor of the plaintiff when measured against the advanced years of the defendants. We find nothing in plaintiff's home and surroundings that mitigates against his right to the child's custody.

The plaintiff and Charlotte were divorced on March 12, 1952, when Lin Dee was 15 months of age. The child was properly placed in the care of her mother. Plaintiff was required to provide child support. The plaintiff has made every payment of child support as it came due. The plaintiff visited the child when she was very small. He has not visited her during the last 9 years, although he has resided less than 100 miles distant. Plaintiff said he did not visit the child for the reason that he was requested by Charlotte not to do so because she did not believe it to be in the best interest of the child. If his failure to visit the child was in deference to the wishes of Charlotte and what he thought was the best interests of the child, an indifference to the child's welfare would not be indicated. The evidence shows that plaintiff did keep himself informed of the child's welfare through his own parents, who visited the child on an average of once a month. Some evidence was offered that plaintiff was intoxicated on two occasions more than 9 years previous to the trial. Plaintiff denied the truth of this statement. The subsequent conduct of the plaintiff as testified to by disinterested parties does not support a finding that he used intoxicants to the detriment of himself or family, if he used

them at all.  Plaintiff has not failed to support the child. He has not abandoned the child.  He has not voluntarily relinquished the child to the Cotners with the expectation that they would furnish care and support.  We think the evidence shows that plaintiff is a fit and proper person to have the custody of his child and that he has done. nothing that would sustain a finding that he had forfeited his superior right to her custody.

The record shows that the defendants have had the child in their home for a period of 10 years and that they have become attached to the child.  The child has also become much attached to them and prefers to remain with them.  The unfortunate situation arose, however, because the mother, who had the legal custody of the child, took her there.  It was not because of any consent or abandonment of the child on the part of the father.  It cannot be said that the natural result of the attachment of the grandparents and Lin Dee for each other was in any manner the result of a choice on the part of the plaintiff.  It is one of those domestic situations which cause great concern on the part of this court as it did the trial court.  The case of Baumann v. Baumann, 169 Neb. 805, 101 N. W. 2d 192, is almost on all fours on its facts and result as the case presently before us.  The reasoning of that case is decisive of the issues raised by this appeal.

The record discloses that the trial court exhaustively reviewed the evidence and the law at the time the judgment was rendered.  It indicates a careful consideration of every pertinent fact.  The trial court had the opportunity to see and hear the witnesses, an advantage which this court does not have.  While this court is required to try the case de novo on the record, where the evidence is in unreconcilable conflict, the findings of the trial court with respect thereto are entitled to great weight. After a consideration of the evidence, the law, and the findings of the trial court as above stated, we can find no legal basis for interfering with the judgment

of the trial court, and its judgment is affirmed.

AFFIRMED.

WHITE, C. J., SPENCER, and BOSLAUGH, JJ., dissenting.

We respectfully dissent from the holding of the majority of the court in this case. The opinion of the court states: "When the superior right of the father has been forfeited, the natural right of the father to have the custody of his minor child must give way to the best interests of the child * * *." We submit that the statement quoted is an accurate summarization of the holding of the court. We do not agree that it is a correct statement of the law. We believe that parental rights in child custody proceedings are preferential, not absolute; and that the rights, desires, and wishes of parents should be considered and respected in such proceedings except where they conflict with the welfare of the children involved. In most cases the best interests of the child require that its custody be awarded to its parent. The difficulty arises when the best interests of the child require that its custody be awarded to someone other than its parent.

"Wherever a controversy arises between different claimants to the custody of a child, the probable welfare of the child is the controlling consideration to which all questions of superior legal rights are entirely subordinated." 27 Am. Jur., Infants, § 108, p. 829. "The court, in passing upon the writ in a case involving the custody of a child, deals with a matter of an equitable nature; it is not bound by any mere legal right of parent or guardian, but is to give his or her claim to the custody of the child due weight as a claim founded on human nature and generally equitable and just. Therefore, these cases are decided not upon the legal right of the petitioner to be relieved from unlawful imprisonment or detention, as in the case of an adult, but on the court's view of the best interests of those whose welfare requires that they be in custody of one person or another; and hence, a court is in no case bound to deliver a child into the

custody of any claimant or of any person, but should, in the exercise of a sound discretion, after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require. In short, the child's welfare is the supreme consideration, irrespective of the rights and wrongs of its contending parents, although the natural rights of the parents are entitled to due consideration." 25 Am. Jur., Habeas Corpus, § 80, p. 204.

In an early case, Sturtevant v. State ex rel. Havens, 15 Neb. 459, 19 N. W. 617, 48 Am. R. 349, this court held that in a controversy for the custody of a child the order of the court should be made with a single reference to the best interests of the child. This court stated: "Were the question of the *right* of the father the only question to be considered, we should, perhaps, coincide with the conclusions of law as stated by the district court. It is true this legal right was at one time, in the early history of our jurisprudence, fully recognized both by the courts of England and of this country; and it is, in part, made the law of this state by section 6, chapter 34 of the Compiled Statutes, which provides that, 'The father of the minor, if living, and in case of his decease, the mother, while she remains unmarried, being themselves respectively competent to transact their own business, and not otherwise unsuitable, shall be entitled to the custody of the person of the minor and to care for his education.' * * * It is true that this section is declarative of the law in its general sense, but we cannot agree with the defendant's counsel and decide the cause upon the rule there laid down, unaided by recent judicial decisions or the circumstances of the case. But rather, taking our statute as a general guide, we will look to the particular necessities of the case and give our special attention to the best interests of the child about whom this unfortunate controversy has arisen. * * * From a careful examination of the authorities at our command we think the prevailing rule in this country may be briefly stated

to be, that in controversies similar to this, especially where the infant is of the tender age of the one contended for, the court will consider only the best interest of the child, and make such order for its custody as will be for its welfare, without any reference to the wishes of the parties."

The Sturtevant case was followed for many years. In recent years the court has qualified the rule of the Sturtevant case by stating that custody is to be determined by the best interests of the child "with due regard for the superior rights of fit, proper, and suitable parents." Apparently this statement of the rule had its origin in a supplemental opinion in Gorsuch v. Gorsuch, 143 Neb. 578, 11 N. W. 2d 456. See, also, Lakey v. Gudgel, 158 Neb. 116, 62 N. W. 2d 525, in which the court announced that Kaufmann v. Kaufmann, 140 Neb. 299, 299 N. W. 617, was overruled to the extent that it was in conflict.

In the case at bar the court now holds that a parent has a superior right to custody and that the best interests of the child shall not be considered unless the right of the parent has been forfeited. "Due regard" has become "absolute right" and the right of the parent is the controlling and mandatory consideration, unless the court finds affirmatively that the superior right has been forfeited. The judicial point of origin of "the best interests of the child" is only reached after the elimination, by forfeiture, of the absolute right to have the custody of the child. We submit that judicial eyes should be open at all times to the paramount and overriding considerations of the best interests of the child. We do not quarrel with the proposition that the parental and blood relationship is normally a most potent producer of the care, love, and affection which is vital to the best interests of a child, and that such relationship should be given highly preferential consideration. We do quarrel with elevating a highly preferential consideration to the level of absolute right. Besides creating a judicial blindness as to the true considerations present, it results in a tortuous

wrestling with the narrowed legal concept of "fitness" of a parent. It results in situations where, in order to permit the child to remain in an established and developed parental relationship with all that that imports, we are forced to strain the evidence in order to find the blood parent "unfit." The harshness and the rigidity of the old common law rule was carefully examined and rejected in the early history of our law in this state. It would seem now that the court returns to the common law rule of the early cases discussed in the Sturtevant and Kaufmann cases.

The district judge, in announcing his decision in this case, made this summary of the evidence of the appellants: "Now, the evidence on behalf of the grandparents, as well as the child, indicates and demonstrates that they have become very attached to the child during the approximate nine years that the child has made its home as a member of their household, and it has been in that home that she has largely been reared since she was two years old, and probably to a large extent by the grandparents because the mother was working, except toward the very end, the mother was actually working most of the time up until her last illness. It really is the only home, you might say, that the child has ever known since she has been old enough to know where home was. She states she is happy with her grandparents and doesn't want to leave them and in fact indicated that she didn't even know her father, that he was a stranger to her." This statement by the trial court is not only borne out conclusively by the record in this case, but it may be enlarged by the undisputed evidence as to the effect of this fine home and upbringing upon the development of the girl. She is a top student in school scholastically, is happily adjusted with her friends and schoolmates in the community, and is in ideal health.

The majority opinion orders a destruction and shattering of this established home and the love and security relationship implicit therein. The effect of this situation

on the girl herself was dramatically illustrated in the record.

Lin Dee L. Raymond testified that the first time that she could remember having seen her father, the appellee, was when he appeared in court on May 28, 1962. The appellee admitted that the last time he had seen Lin Dee, before the trial, was in December 1953.

Lin Dee's mother died on November 11, 1961. Shortly thereafter Lin Dee learned that her father wanted to obtain custody of her. Lin Dee became worried and depressed, and on November 26, 1961, the appellants took Lin Dee to a physician. The doctor found no organic illness and prescribed a sedative. On December 6, 1961, her condition had become more serious and she was unable to sleep. On that date the physician prescribed an additional medicine which she takes at night for sleep.

The opinion of this court holds that this child should be taken from a stable and adjusted home where a normal parental relationship with love and security attachments has developed and that she should be thrust into a home among complete strangers. Her actual custody, control, and supervision will be that of a stepmother who has a child by a previous marriage and two children by the appellee. The appellee is absent from the home 7 days at a time on missile base work and is home once between each 7 days.

In this case the child's happiness and welfare are assured, for the present at least, if the appellants are allowed to retain custody. To make a change in the custody would, at best, be an experiment which the court has refused in other cases. See, In re Burdick, 91 Neb. 639, 136 N. W. 988, 40 L. R. A. N. S. 887; Williams v. Williams, 161 Neb. 686, 74 N. W. 2d 543. In the Williams case, where the grandparents were allowed to retain the custody of an 8-year-old boy as against his father, this court said: "A court may well hesitate to take the child from such surroundings to try an experiment elsewhere."

We would find that Lin Dee should be allowed to re-

main with the appellants at this time. In the event that a change of circumstances occurs in the future so that it then becomes in the best interest of Lin Dee that a change in her custody be made, appropriate proceedings may be had at that time.

MESSMORE, YEAGER, and BROWER, JJ., concurring.

We quite agree that the effect of the majority opinion is to hold that a fit, proper, and suitable parent, who has not forfeited his natural right as a parent, has a right superior to that of the state to control, rear, and educate his own children. It has long been the rule in this state that where the custody of a minor child is involved in a habeas corpus action the custody of the child is to be determined by the best interests of the child with due regard for the superior rights of a fit, proper, and suitable parent. The dissent complains that "due regard" has become "absolute right." We accept this statement as being correct where the parent is a fit, proper, and suitable person and has done nothing to forfeit his natural right as a parent.

In the case of Norval v. Zinsmaster, 57 Neb. 158, 77 N. W. 373, 73 Am. S. R. 500, this court said: "We are aware that this court has several times asserted that in such controversies as the present the order should be made with sole reference to the best interests of the child. But this has been broad language applied to special cases. The court has never deprived a parent of the custody of a child merely because on financial or other grounds a stranger might better provide. The statute declares and nature demands that the right shall be in the parent, unless the parent be affirmatively unfit. The statute does not make the judges the guardians of all the children in the state, with power to take them from their parents, so long as the latter discharge their duties to the best of their ability, and give them to strangers because such strangers may be better able to provide what is already well provided. If that were the law, it would be soon changed, by revolution if necessary."

In Clarke v. Lyon, 82 Neb. 625, 118 N. W. 472, 20 L. R. A. N. S. 171, this court held: "The unfitness which deprives a parent of the right to the custody of his children must be positive, and not comparative, and the mere fact that the children would be better nurtured or cared for by a stranger is not sufficient to deprive the parent of his right to their custody."

We are in agreement with the dissent that the present rule of this court has been followed since Gorsuch v. Gorsuch, on rehearing, 143 Neb. 578, 11 N. W. 2d 456, decided in 1943.

The dissent criticises the rigidity of the long-adopted rule of this court. The same could be said of the Ten Commandments and the Bill of Rights. In cases where the rights of a citizen are being protected against the power of the state, a precise and unqualified statement of the rule, labeled as rigidity by the dissent, is most appropriate to insure the maintenance of the right.

Unless the language "with due regard for the superior rights of a fit, proper, and suitable parent" means that such a parent has a superior right to all others, including the state, the words afford the parent no superior right that he can enforce. It is axiomatic that to grant a right and withhold a remedy is tantamount to the existence of no right at all.

The dissenting opinion asserts that the transfer of Lin Dee to her father is an experiment that should not be permitted. If the placing of the child with her own father is to be described as an experiment, it is one that has proved successful over the years irrespective of the fact that a parent occasionally fails in his duties and obligations to his child. On the other hand, the leaving of the child with her aging grandparents, after she lost the love and care of a mother by the latter's untimely death, is likewise an experiment. The dissent states that Lin Dee should remain with her grandparents and, in the event of a change of circumstances affecting her best interests, a change in her custody can be made.

The same remedy exists if the father, after obtaining custody of his child, fails in his duties and obligations to his child.

This case, stripped of its nonessentials, raises the issue as to whether or not the power of the state over minor children is superior to that of a parent who has failed in no respect in his duties and obligations to his child. It is the position of the dissenting opinion that the right of the state is superior to the rights of the natural parent, however fit, proper, and suitable he may be. It is the position of the majority that a fit, proper, and suitable father, and not the state, has the primary right to nurture and rear his child and to direct its training, education, and religious instruction. We assert that the rights of the state, exercised by the powers of a court of equity, are subordinate to the rights of a parent except where the parent is not a fit, proper, or suitable person or has forfeited his natural right as a parent. It is our position that such a parent is, as a matter of law, the proper person to determine the best interests of the child until it is affirmatively shown that he has become disqualified from doing so. We submit that the courts are not the guardians of all the children in the state. The right of a court to assume jurisdiction over minor children arises when parents have failed in their responsibilities or forfeited their natural rights as parents, excluding, of course, the determination of which of two contesting parents shall have the care and custody of their minor children.