IN RE INQUIRY OF JOHN WILLIAM PERRY, A MINOR CHILD.
ROBERT L. JONES ET AL., APPELLANTS, V. STATE OF
NEBRASKA ET AL., APPELLEES.

123 N. W. 2d 633

Filed October 11, 1963.   No. 35355.

Richard G. Stehno, for appellants.

Donald L. Knowles, Kenneth P. Weiner, James M. Murphy, and Sebastiano Caporale, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action initiated by petitioners in the juvenile court of and for Douglas County, Nebraska, for the purpose of having the juvenile court declare John William Perry to be a neglected child pursuant to section 43-201, R. R. S. 1943. The judge of said juvenile court in dismissing the petition stated: "* * * I am going to dismiss the matter on the grounds that this Court does not have jurisdiction over acts of *negligence* (neglect) occuring (sic) in another State. I am going to add that even assuming that the Court might properly have jurisdiction over *negligence* (neglect) in another State, that there has been no competent evidence offered to support the allegations of neglect since all of the testimony offered has been self-serving testimony. The petition is dismissed."

Petitioners prosecuted an appeal to this court. They set out seven specific assignments of error. Briefly, they may be summarized as follows: First, was the decision of the court contrary to law; and second, was the decision of the court contrary to the evidence adduced? We sustain the position of appellants on both points.

John William Perry, who was born October 15, 1959, is the son of Clifton J. Perry and Annie Belle Perry, nonresidents of Nebraska and at all times material herein residents of Kansas City, Missouri. The petitioners, hereinafter referred to as appellants, are Robert L. Jones and Ethel Jones, husband and wife. Ethel Jones is a

sister of Clifton J. Perry and the paternal aunt of John William Perry.

On February 16, 1961, the appellants, who are residents of Omaha, Nebraska, after a call from a relative telling them of conditions in the Perry home, went to Kansas City. When they arrived at the Perry home, they found John William Perry, hereinafter referred to as the child, with its father. It was on a bare floor, clothed only with a diaper and a dirty undershirt. It had a bad cold, was crying, and "his nose was running down to his chin * * *." The house was poorly heated, very filthy, and had what Mr. Jones described as a "rotten stinking odor," which was so bad that appellants left the home to return when Mrs. Perry was expected to be present. When in the house they observed many large holes in the baseboard of the kitchen and the back of the house which they assumed to be rat holes.

When the appellants returned, they brought some things for the child. Mrs. Perry was then home. She told them that conditions were real bad and that the Perrys could not take care of the child. The mother had packed all of the child's belongings in a cardboard box. The box contained clothing which was dirty and ragged and was several sizes too large for the child. Its condition was such that appellants had it destroyed. On the way back to Omaha appellants stopped overnight with relatives at Atchison, Kansas. These relatives, who observed the condition of the child, were witnesses at the hearing and testified to the child's condition at that time.

When appellants received the child, in addition to the bad cold, he was nervous and seemed to be afraid of the slightest noise. He was extremely dirty. The dirt was ground into his skin, with a ring of dirt on his neck and stomach. He also had a diaper rash with open sores on his buttocks. His stool was white and chalky and he had no strength in his legs. Appellants took the child to a doctor who said the child had not had proper food.

He was given shots, put on vitamins and a proper diet, responded to treatment, and developed normally. His whole personality changed and he became an active, normal child.

The evidence indicates that the Perrys had two other children, ages four and six, who have been legally adopted by an older brother of Mrs. Jones and now live in Minnesota. Mrs. Perry also had three children by a previous marriage. They do not reside with her but are being raised by three different families. Mrs. Perry is working in a Kansas City nursing home for the aged for $30 per week and is away from home from 6 a. m. until 7 p. m. seven days a week. In the 6½ years that Mrs. Jones has known Mrs. Perry, the living conditions of the Perrys have gotten progressively worse. Mr. Perry is an alcoholic, lazy, and shiftless. At the time appellants took the child he was unemployed because he had been discharged when he failed to report for work.

The evidence indicates that there was no specific agreement or understanding between the appellants and the Perrys as to whether the appellants would keep the child permanently or how long the arrangement would continue. While appellants are anxious to adopt the child, they have no objection to returning it if conditions have changed so that the child will be properly cared for.

From February 16, 1961, to the time of the trial, the Perrys had not seen the child, had not sent any clothing to it or money for its care, nor had they made any other provision for it. Mrs. Perry did write appellants five or six times to say she was coming to Omaha, but she did not appear. In October 1961 Mrs. Perry wrote she was coming to Omaha for the child. Appellants had been advised that the Perrys had separated and that Mrs. Perry was using another family name. They had also had a letter from Mr. Perry advising them that he had seen pigpens cleaner than Mrs. Perry's present

home, and urging them to keep the child. Appellants then filed this proceeding.

The action was filed with the consent of the county attorney, and a deputy county attorney handled the proceeding at the hearing. The court appointed a guardian ad litem for the child who sent the mother a copy of the petition and advised her of the date of the hearing. She sent the copy of the petition back with a letter which reads as follows:

"1015 Troost
Kansas City Mo
Dear Mathews & Kelley
I not signing anything & dont sent me any more paper. & dont put my name on any thing my Lauer said so.

Signs
Mrs. Annie Bell"

The father had been notified of the proceeding, and through his attorney stated that he would not be present.

An appeal from a finding and adjudication of the district court by the authority of Chapter 43, article 2, R. R. S. 1943, that a child is or is not neglected or dependent, is disposed of in this court by trial de novo upon the record. See Krell v. Sanders, 168 Neb. 458, 96 N. W. 2d 218. Section 43-238, R. R. S. 1943, provides that any final order or judgment entered by a separate juvenile court may be reviewed by the Supreme Court of Nebraska within the same time and in the same manner prescribed by law for review of any order or judgment of the district court.

A statute providing as to who are neglected children should be liberally construed to aid the purpose of its enactment. Whether a child is a neglected child within such statute is a question of fact, and each case must be determined on its own facts. Stanley v. State, 105 Neb. 260, 179 N. W. 1019.

Appellees urge that this case is controlled by State v. Gross, 173 Neb. 536, 114 N. W. 2d 16. While the law

stated therein is controlling, there is very little factual resemblance between the two cases. Here the evidence is conclusive that the parents had failed or neglected to provide proper subsistence and necessary care for the child's health. Here the appellants were faced with an emergency situation. The information they had, while hearsay, was that conditions had not changed. Rather, the broken home and the use by the mother of another family name might suggest that they had gone from bad to worse. Appellants were, and had reason to be, concerned about the child's welfare. To protect the child they sought the aid of the juvenile court. While the child was not neglected in their home, it was readily apparent to them that unless conditions had radically changed, the child would be neglected if removed from its present environment to the mother's home.

At the time the child was taken by appellants it was being deprived of subsistence, care, nurture, and certainly proper medical attention. The meager record provided is ample to show gross neglect at the time the child was taken by appellants. This case presents a situation where the court is required to act to protect the interests of the child at the very least to the extent of exercising jurisdiction until a proper showing has been made that the mother is a fit and proper person to assume control and that conditions have so changed that the child will not be neglected.

The record indicates that the guardian ad litem had requested a report on the mother's home in Kansas City from the Kansas City welfare bureau but the court felt this report to be immaterial at that stage of the proceeding. In the view we take of the proceeding, it was extremely material. Appellants were attempting to protect the welfare of the child. The mother was threatening to take the child. It does not seem logical that the court should depend on a highly speculative probability that conditions had changed for the better when actual impartial evidence was readily available.

The jurisdiction of a state to regulate the custody of an infant found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. As we said in In re Application of Reed, 152 Neb. 819, 43 N. W. 2d 161: "The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the child, but it arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine its status and the custody that will best meet its needs and wants, and residence within the state suffices even though the domicile may be in another jurisdiction."

The general rule is stated in an annotation found in 4 A. L. R. 2d at page 16: "Where there is no outstanding judicial award of custody by a foreign court the courts are nearly unanimous in holding that even though the children may be domiciled without the state, power in the court exists to make an award of custody of children present in the state in furtherance of the welfare of the children."

In State v. Gross, 173 Neb. 536, 114 N. W. 2d 16, we held: "A child must in fact be dependent and neglected at the time proceedings are instituted to have it declared a neglected and dependent child, or it should be in danger of so becoming in the near future." Clearly, there was every reason to believe that the child was in danger of becoming a neglected child if removed from his present home in Nebraska.

Under the facts presented herein, we declare the rule to be that it is against the intent of the law to permit the removal of a child from this jurisdiction unless a proper showing is made that it will not become a neglected or dependent child.

The trial court concluded in part that there was no competent evidence adduced of the neglect testified to for the reason that the evidence was all self-serving. We are at a loss to understand the court's reasoning.

We must assume the court was confusing the testimony with a self-serving declaration, which is a statement made out of court which is offered as evidence in the trial. There were no self-serving declarations involved herein. It is true that all of the witnesses were either the appellants, relatives of one of the appellants, or friends of the appellants, but they all testified to the facts as they saw them, and were examined and cross-examined by the attorneys participating and by the court itself. The State was represented by a deputy county attorney, the appellants by their own attorney, and the child by a guardian ad litem.

As we said in Powerine Co. v. Grimm Stamp & Badge Co., 127 Neb. 165, 254 N. W. 722: "A self-serving declaration is one made by a party in his own interest at some time and place out of court, and does not include testimony which he gives as witness at the trial."

In passing, we note that the parents were fully advised of the proceeding, had been served with copies of the petition, and had consulted attorneys in their own jurisdiction, but failed to appear or to object in any manner to the proceeding. The proceeding was filed November 13, 1961, and came on for hearing December 6, 1961. The Perrys had been notified of the hearing by appellants' attorney. The court continued the hearing to December 20, 1961, and instructed the guardian ad litem to notify the Perrys by certified mail, but they did not appear. Evidence was adduced and the hearing was continued until January 9, 1962. No one appeared for the Perrys at the time, and the court continued the hearing to April 24, 1962, at which time the court announced his decision. This does not indicate too great a concern for the welfare of their child by the Perrys.

For the reasons given, we reverse the judgment of dismissal entered by the trial court and remand the cause with directions to award the custody of the child to appellants subject to the further order of the court.

REVERSED AND REMANDED WITH DIRECTIONS.