IN RE INTERESTS OF WAYNE FURROW ET AL.
STATE OF NEBRASKA IN RE INTERESTS OF WAYNE FURROW ET AL., APPELLEES, v. LOUISE RANDALL, APPELLANT.
187 N. W. 2d 586

Filed May 28, 1971. No. 37852.

Conley & Greenwald, for appellant.

Paul L. Douglas and Janice L. Gradwohl, for appellee State of Nebraska.

Joseph J. Carriotto, for appellee Furrow.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The separate juvenile court of Lancaster County, Nebraska, transferred the custody of Wayne Furrow, age 9, and Jack Furrow, age 6, from their mother, Louise Randall, to their natural father, George Furrow. Louise, the mother, appeals to this court. We affirm the judgment and order of the separate juvenile court transferring the custody to the natural father, George Furrow.

The jurisdiction and action of the separate juvenile court were founded on allegations of neglect by the natural mother under section 43-201 (3), R. R. S. 1943. This statute and similar sections of our juvenile court statutes are to be liberally construed with the end objective of the best interests of the children involved. Jones v. State, 175 Neb. 711, 123 N. W. 2d 633; 42 Am. Jur. 2d, Infants, § 16, p. 21.

George and Louise were married on April 26, 1957. They separated in 1962. Termination of the marriage is obscure, Louise claiming she got a Mexican divorce in August 1965 in a town in Mexico, the name of which she does not remember. There is no evidence in this record of a divorce decree, or of a support or child custody order; nor were any sought to be introduced. Four children had been born to the Furrow marriage. The two oldest, Charles and Roger, are now dead. In 1964

they died of suffocation in an abandoned refrigerator. The refrigerator was in Louise's home. She was separated from George Furrow. The children, then ages 5 and 4 died inside the regrigerator during a period of time when she left the children alone to go across the street to make a telephone call in Dallas, Texas. The circumstances surrounding the short period of time she was separated from these children, how they got into the refrigerator, are not clear from the record. The only witness was Louise. Prior to the death of these children, Louise had threatened to kill them. She also had threatened to sell her children. There was friction between her and her mother who lived upstairs in another apartment in Kansas City. Louise testified in this case that she had stated prior to the children's death she would rather see her children dead than living with her mother and she would rather sell or give away her children than have them in her mother's custody. The evidence establishes almost conclusively that Louise had an unstable personality and that she required psychiatric help. It is undisputed that during her marriage to George Furrow she had threatened to shoot him and, in fact, she did have a .38 caliber pistol in her possession when she was at the Dallas police department after the death of Charles and Roger, described above. She had also attempted suicide.

We now trace the continuity up to the date of April 26, 1970. Louise married Robert Randall in Crocker, Missouri, on October 9, 1965, using the name Louise Silcutt. After marriage to Randall, she joined him in Europe where he was a member of the armed services. She took one boy with her, leaving the other with her mother. Randall was discharged on June 2, 1969. The family went to Kansas City, Missouri, to live. The evidence shows an unstable marital environment, with Randall leaving Louise and the children many different times. The last time he left her was about April 19, 1970, and he returned on April 26, 1970, the date of the

immediate incidents which led to this juvenile court hearing. On that date, the evidence establishes that Randall whipped both Wayne and Jack with a dog leash. Bruises and welts were left on the children and Wayne became unconscious. The occasion for the whipping was the suspicion that the boys had taken some money from the family piggy bank and given some of the money to neighbor children. Randall admitted that the injuries were the result of his "discipline." He also conceded that the punishment he inflicted was extreme. Louise's mother who resided in an apartment upstairs, heard the children screaming during the incident, went to the Randall apartment to investigate, and gave a full description of the boys' injuries. She then called the police and two officers were sent to investigate. The day after the incident Randall terminated his employment and 3 days after the incident Louise left Kansas City with Wayne and Jack at midnight without saying "good-bye" to her mother. The Randalls left Kansas City just prior to the time police officers arrived to take the children into custody. Louise testified the reason she left Kansas City was because of the incident. On arrival in Lincoln, Louise was contacted by the authorities and the present action in juvenile court ensued.

The evidence shows a definite relationship between the main incidents precipitating this action and a continuous history of marital discord, violence, and neglect of the two boys. The evidence shows there had been previous incidents of Randall striking the children severly. Also, there is evidence that Louise let the children become hungry and filthy on occasions; and that she left the children alone after school until she came home from work. The effect on the children is demonstrated in the record. Wayne was in a special school for emotionally disturbed children; and the grandmother, Mrs. Chester, mother of Louise, was paying the tuition at this school.

The statute, section 43-201 (3), R. R. S. 1943, provides that a neglected child shall mean any child "who is in a situation * * * dangerous to life or limb or injurious to the health or morals of such child." In construing this statute, we have held that it should be liberally construed to aid the purpose of its enactment and that whether a child is a neglected child within the statute is a question of fact, and each case must be determined on its own facts. Stanley v. State, 105 Neb. 260, 179 N. W. 1019; Jones v. State, *supra*. An experienced trial judge, after hearing all the evidence, determined that Wayne and Jack were neglected children in that they were in a situation which was dangerous to life and limb and injurious to the health of such children. The evidence clearly sustains this finding. We have held that in cases involving child custody determinations in juvenile court, the findings of the trial court, both as to evaluation of the evidence and to the matter of custody, will not be disturbed unless there is a clear abuse of discretion or the decision is against the weight of the evidence. Jones v. Jones, 183 Neb. 223, 159 N. W. 2d 544; 42 Am. Jur. 2d, Infants, § 43, p. 44.

Besides the actual abuse of the children, the most serious incident being recited in detail herein, there was general evidence of abuse of the children physically and the trial court had the advantage of the evidence showing that the marriage between the Randalls had been a stormy one, with Randall leaving the family home on many occasions. The evidence shows that Wayne was attending a special school because of his developing emotional problems and the evidence further shows that he had been overly aggressive and abusive in his play with other children. The court, in making the findings it did, also had the advantage, so important in cases of this type, of seeing and observing the witnesses, the children, and the parents involved.

Louise's appeal, ably presented by counsel, is primarily based upon an attempt to fragmentize the evidence into

isolated incidents. Then, the argument runs, that each isolated incident is not in itself sufficient to warrant the deprival of the mother to the custody, care, control, and love of her children. The charge of neglect of children is a general one and an examination of what is for the best interests of such children necessarily involves an examination of the continuous conduct and attitude of the responsible parent together with all related circumstances. Ordinarily such an examination does not lend itself to the narrow resolution of guilt or innocence of a specific charge in time and place. Child care is a continuous concept and traditional notions as to formulation of issues in an adversary proceeding must give way to an examination in a larger perspective. It appears, therefore, from an examination of all of the facts and circumstances in this case stretching over a period of time of about 6 years, that the determination of neglect by the trial court was supported by a preponderance of the evidence. The evidence further tends to show that the previous care of these children is having a very serious and substantial effect upon the present and future physical and mental health of these children. It further appears that the evidence as to physical abuse required the court to act summarily in taking the custody of the children from Louise.

The court's decree did not require the transfer of these children for placement with the state or some agency thereof. As to George Furrow, there is no evidence of a valid divorce decree or any child custody order. There is no evidence that the natural father, George Furrow, is not a fit and proper person for the custody of his minor children. The only evidence of neglect was his failure to pay child support. There was no decree requiring this and the evidence is that such support had never been sought by Louise. We also observe that the juvenile court retains a continuing supervisory jurisdiction in this case and may review the circumstances of the care of these children at any time in

the future. It appears that the decision of the trial court transferring the custody of the two boys to the natural father was proper. The trial court's order provided that a review of the matter was to be held by the judge, "upon application of any interested party showing a change in circumstances." We observe that the court did provide for a new hearing on March 26, 1971, and that at that time no motions had been filed by the parties interested requesting a change in the disposition of the custody of these children.

The judgment and order of the separate juvenile court of Lancaster County transferring the custody of the children involved herein to the natural father, George Furrow, are correct in all respects and are affirmed.

AFFIRMED.